# UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

| | | |
|---|---|---|
| UHLIG LLC d/b/a CONDOCERTS™ and WELCOMELINK®, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 2:22-cv-02475-KHV-ADM |
| v. | ) | |
| | ) | |
| PROPLOGIX, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT PROPLOGIX, LLC'S FIRST AMENDED ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND, AND COUNTERCLAIM

COMES NOW Defendant, PropLogix, LLC (hereinafter "Defendant"), by and through undersigned counsel, and for its First Amended Answer to Plaintiff's Second Amended Complaint and Jury Demand, states as follows:

## PARTIES

1.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 1 of Plaintiff's Second Amended Complaint, including subparts (a) through (c) and (d)(i) through (d)(iv), and therefore denies those allegations.

2.     Defendant admits the allegations of Paragraph 2 of Plaintiff's Second Amended Complaint, including subparts (a) through (f).

## JURISDICTION AND VENUE

3.     Paragraph 3 is a legal conclusion for which no response is required. To the extent that a response is deemed necessary, Defendant is without sufficient information to admit or deny the allegations of Paragraph 3 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

4.     Paragraph 4 is a legal conclusion for which no response is required. To the extent

that a response is deemed necessary, Defendant is without sufficient information to admit or deny the allegations of Paragraph 4 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

5.      Paragraph 5 is a legal conclusion for which no response is required. To the extent that a response is deemed necessary, Defendant is without sufficient information to admit or deny the allegations of Paragraph 5 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

6.      Paragraph 6 is a legal conclusion for which no response is required. To the extent that a response is deemed necessary, Defendant is without sufficient information to admit or deny the allegations of Paragraph 6 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

## <u>GENERAL ALLEGATIONS</u>

7.      Defendant is without sufficient information to admit or deny the allegations of Paragraph 7 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

8.      Defendant is without sufficient information to admit or deny the allegations of Paragraph 8 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

9.      Defendant is without sufficient information to admit or deny the allegations of Paragraph 9 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

10.      Defendant is without sufficient information to admit or deny the allegations of Paragraph 10 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

11.      Defendant is without sufficient information to admit or deny the allegations of Paragraph 11 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

12.      Defendant is without sufficient information to admit or deny the allegations of

Paragraph 12 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

13.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 13 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

14.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 14 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

15.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 15 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

16.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 16 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

17.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 17 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

18.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 18 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

19.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 19 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

20.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 20 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

21.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 21 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

22.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 22 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

23.     Defendant admits the allegations of Paragraph 23 of Plaintiff's Second Amended Complaint.

24.     Defendant admits the allegations of Paragraph 24 of Plaintiff's Second Amended Complaint.

25.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 25 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

26.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 26 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

27.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 27 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

28.     Defendant denies the allegations of Paragraph 28 of Plaintiff's Second Amended Complaint.

29.     Defendant admits that the cited language appears on Defendant's website but states that such written content speaks for itself.   Defendant denies the remaining allegations of Paragraph 29 of Plaintiff's Second Amended Complaint.

30.     Defendant denies the allegations of Paragraph 30 of Plaintiff's Second Amended Complaint.

31.     Defendant admits to sending letters to Uhlig Represented Communities. Defendant denies the remaining allegations of Paragraph 31 of Plaintiff's Second Amended Complaint.

32.     Defendant admits to sending letters to Uhlig Represented Communities. Defendant denies the remaining allegations of Paragraph 32 of Plaintiff's Second Amended Complaint.

33.     Defendant denies the allegations of Paragraph 33 of Plaintiff's Second Amended Complaint, including subparts (a) through (i).

## FIRST CLAIM FOR RELIEF
### (Breach of Contract – Terms of Use)

34.     Defendant incorporates its responses to Paragraphs 1 through 33 above as if fully

stated herein.

35.     Paragraph 35 is a legal conclusion for which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegations of Paragraph 35 of Plaintiff's Second Amended Complaint.

36.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 36 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

37.     Paragraph 37 is a legal conclusion for which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegations of Paragraph 37 of Plaintiff's Second Amended Complaint.

38.     Defendant denies the allegations of Paragraph 38 of Plaintiff's Second Amended Complaint.

39.     Defendant denies the allegations of Paragraph 38 of Plaintiff's Second Amended Complaint.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract – Account Registration Agreement)

40.     Defendant incorporates its responses to Paragraphs 1 through 39 above as if fully stated herein.

41.     Paragraph 41 is a legal conclusion for which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegations of Paragraph 41 of Plaintiff's Second Amended Complaint.

42.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 42 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

43.     Paragraph 43 is a legal conclusion for which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegations of Paragraph 43 of Plaintiff's

Second Amended Complaint.

44.     Defendant denies the allegations of Paragraph 44 of Plaintiff's Second Amended Complaint.

45.     Defendant denies the allegations of Paragraph 45 of Plaintiff's Second Amended Complaint.

**THIRD CLAIM FOR RELIEF**
**(Breach of Contract – Order Submission Agreement)**

46.     Defendant incorporates its responses to Paragraphs 1 through 45 above as if fully stated herein.

47.     Paragraph 47 is a legal conclusion for which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegations of Paragraph 47 of Plaintiff's Second Amended Complaint.

48.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 48 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

49.     Paragraph 49 is a legal conclusion for which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegations of Paragraph 49 of Plaintiff's Second Amended Complaint.

50.     Defendant denies the allegations of Paragraph 50 of Plaintiff's Second Amended Complaint.

51.     Defendant denies the allegations of Paragraph 51 of Plaintiff's Second Amended Complaint.

**FOURTH CLAIM FOR RELIEF**
**(Unjust Enrichment)**

52.     Defendant incorporates its responses to Paragraphs 1 through 51 above as if fully

stated herein.

53.     Defendant denies the allegations of Paragraph 53 of Plaintiff's Second Amended Complaint.

54.     Defendant denies the allegations of Paragraph 54 of Plaintiff's Second Amended Complaint.

55.     Defendant denies the allegations of Paragraph 55 of Plaintiff's Second Amended Complaint.

56.     Defendant denies the allegations of Paragraph 56 of Plaintiff's Second Amended Complaint.

57.     Defendant denies the allegations of Paragraph 57 of Plaintiff's Second Amended Complaint.

**FIFTH CLAIM FOR RELIEF**
**(Fraud)**

58.     Defendant incorporates its responses to Paragraphs 1 through 57 above as if fully stated herein.

59.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 59 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

60.     Paragraph 60 is a legal conclusion for which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegations of Paragraph 60 of Plaintiff's Second Amended Complaint.

61.     Defendant denies the allegations of Paragraph 61 of Plaintiff's Second Amended Complaint.

62.     Defendant denies the allegations of Paragraph 62 of Plaintiff's Second Amended Complaint.

63.     Defendant denies the allegations of Paragraph 63 of Plaintiff's Second Amended Complaint.

64.     Defendant denies the allegations of Paragraph 64 of Plaintiff's Second Amended Complaint.

65.     Defendant denies the allegations of Paragraph 65 of Plaintiff's Second Amended Complaint.

**SIXTH CLAIM FOR RELIEF**
**(Tortious Interference with Business Relationships)**

66.     Defendant incorporates its responses to Paragraphs 1 through 65 above as if fully stated herein.

67.     Defendant admits that Uhlig terminated Defendant's access to Uhlig's web-based ordering sites and that Uhlig subsequently contacted Uhlig represented communities directly. Defendant is without sufficient information to admit or deny the remaining allegations of Paragraph 67 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

68.     Defendant denies the allegations of Paragraph 68 of Plaintiff's Second Amended Complaint.

69.     Defendant denies the allegations of Paragraph 69 of Plaintiff's Second Amended Complaint.

70.     Defendant denies the allegations of Paragraph 70 of Plaintiff's Second Amended Complaint.

71.     Defendant denies the allegations of Paragraph 71 of Plaintiff's Second Amended Complaint.

72.     Defendant denies the allegations of Paragraph 72 of Plaintiff's Second Amended Complaint.

73.     Defendant denies the allegations of Paragraph 73 of Plaintiff's Second Amended Complaint.

74.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 74 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

75.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 75 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

76.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 76 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

77.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 77 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

78.     Defendant denies the allegations of Paragraph 78 of Plaintiff's Second Amended Complaint.

79.     Defendant denies the allegations of Paragraph 79 of Plaintiff's Second Amended Complaint.

80.     Defendant denies the allegations of Paragraph 80 of Plaintiff's Second Amended Complaint.

81.     Defendant denies the allegations of Paragraph 81 of Plaintiff's Second Amended Complaint.

82.     Defendant denies the allegations of Paragraph 82 of Plaintiff's Second Amended Complaint.

83.     Defendant denies the allegations of Paragraph 83 of Plaintiff's Second Amended Complaint.

84.     Defendant denies the allegations of Paragraph 84 of Plaintiff's Second Amended

Complaint.

## **SEVENTH CLAIM FOR RELIEF**
**(Deceptive and Unfair Competition under the Florida Deceptive and Unfair Trade Practices Act)**

85.    Defendant incorporates its responses to Paragraphs 1 through 84 above as if fully stated herein.

86.    Defendant is without sufficient information to admit or deny the allegations of Paragraph 86 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

87.    Paragraph 87 is a legal conclusion for which no response is required. To the extent that a response is deemed necessary, Defendant is without sufficient information to admit or deny the allegations of Paragraph 87 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

88.    Defendant is without sufficient information to admit or deny the allegations of Paragraph 88 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

89.    Defendant admits the allegations of Paragraph 89 of Plaintiff's Second Amended Complaint.

90.    Defendant admits the allegations of Paragraph 90 of Plaintiff's Second Amended Complaint.

91.    Defendant denies the allegations of Paragraph 91 of Plaintiff's Second Amended Complaint.

92.    Defendant denies the allegations of Paragraph 92 of Plaintiff's Second Amended Complaint.

93.    Defendant denies the allegations of Paragraph 93 of Plaintiff's Second Amended Complaint.

94.     Defendant denies the allegations of Paragraph 94 of Plaintiff's Second Amended Complaint.

95.     Defendant denies the allegations of Paragraph 95 of Plaintiff's Second Amended Complaint.

96.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 96 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

97.     Defendant is without sufficient information to admit or deny the allegations of Paragraph 97 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

98.     Defendant denies the allegations of Paragraph 98 of Plaintiff's Second Amended Complaint.

99.     Defendant denies the allegations of Paragraph 99 of Plaintiff's Second Amended Complaint.

100.    Defendant denies the allegations of Paragraph 100 of Plaintiff's Second Amended Complaint.

101.    Paragraph 101 is a legal conclusion for which no response is required. To the extent that a response is deemed necessary, Defendant is without sufficient information to admit or deny the allegations of Paragraph 101 of Plaintiff's Second Amended Complaint, and therefore denies those allegations.

102.    Defendant denies the allegations of Paragraph 102 of Plaintiff's Second Amended Complaint.

103.    Defendant denies the allegations of Paragraph 103 of Plaintiff's Second Amended Complaint.

104.    Defendant denies the allegations of Paragraph 104 of Plaintiff's Second Amended

Complaint.

105.    Defendant denies all allegations of fact contained in Plaintiff's "PRAYER FOR RELIEF."

106.    Defendant denies all allegations not specifically admitted herein.

WHEREFORE, having answered, Defendant requests that Plaintiff's Second Complaint Amended Complaint be dismissed in its entirety, that Plaintiff recover naught, and for such further relief as the Court deems equitable and just.

## AFFIRMATIVE DEFENSES

1.    As and for its First Affirmative Defense, Defendant states that Plaintiff has failed, in whole or in part, to state a claim upon which relief can be granted in one or more of the following ways: (a) Plaintiff has failed to state a cognizable cause of action, (b) Plaintiff has not plead facts sufficient to form an essential element of a cause of action, (c) Plaintiff cannot put forth evidence sufficient to prove an essential element of one or more of its claims.

2.    As and for its Second Affirmative Defense, Defendant states that if Plaintiff suffered damages as alleged, which Defendant expressly denies, Plaintiff has failed to mitigate such damages, the specifics of which are to be revealed in discovery, and thus recovery against Defendant should be offset to the extent which Plaintiff could have mitigated such damages.

3.    As and for its Third Affirmative Defense, Defendant states that Plaintiff's claims for breach of contract fail for want of consideration.

4.    As and for its Fourth Affirmative Defense, Defendant states that Plaintiff's claims for breach of contract are unenforceable as unconscionable.

5.    As and for its Fifth Affirmative Defense, Defendant states that all of its actions were performed for a legal and proper purpose.

6.      As and for its Sixth Affirmative Defense, Defendant states that Plaintiff's claims are barred, in whole or in part, by the doctrines of laches, unclean hands, waiver, and/or estoppel, the specific manners of same to be revealed in the course of discovery.

## DEMAND FOR JURY TRIAL

7.      Defendant hereby respectfully requests and demands a trial by jury of all issues so triable.

## DEFENDANT/COUNTERCLAIM PLAINTIFF PROPLOGIX, LLC'S COUNTERCLAIM

COMES NOW Defendant/Counterclaim Plaintiff, PropLogix, LLC ("PropLogix"), by and through undersigned counsel, and for its Counterclaim against Plaintiff/Counterclaim Defendant, Uhlig LLC d/b/a CondoCerts™ and WelcomeLink® ("Uhlig"), states as follows:

## PARTIES, JURISDICTION AND VENUE

1.      This is a counterclaim action for unfair methods of competition and trade practices under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.*, violations of Florida common law against Uhlig, to obtain compliance with the provisions of Fla. Stat. §§ 718.116(8) and 720.30851, and to obtain declaratory relief, injunctive relief, punitive damages, an award of attorneys' fees and other equitable relief.

2.      At all relevant times, Uhlig was a Delaware limited liability company with its principal place of business at 8455 Lenexa Drive, Overland Park, Kansas 66214.  Uhlig does business under the brands CondoCerts and WelcomeLink.

3.      At all relevant times, Uhlig was a national provider of resale and lender processing information ("CIC Information") for common interest residential communities ("CICs"), including homeowner associations, condominiums, co-ops and similar communities in which the deed to real property is encumbered by obligations to a CIC.

4.      At all relevant times, PropLogix was a Florida limited liability company with its principal place of business at 5901 N. Honore Ave., Suite 200, Sarasota, Florida 34243.

5.      At all relevant times, PropLogix provided real estate due diligence services, solutions and software for businesses such as title agents and other professionals involved in closing on the sale of or the refinancing of real property in a CIC—including the ordering of estoppel certificates.

6.      PropLogix's claims arise, in part, out of the same transaction(s) or occurrence(s) that are the subject matter of Uhlig's claims against PropLogix in the instant action.

7.      This Court may exercise personal jurisdiction over Uhlig because it agreed to submit to the jurisdiction of this Court concerning any suit, action or other proceeding arising out of the agreements that are the subject matter of this action.

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Uhlig's members and PropLogix's members, as set forth in Uhlig's Second Amended Complaint (Doc. 25, ¶¶ 1-2) and PropLogix's Answer thereto (Doc. 28, ¶ 2), and the amount in controversy exceeds $75,000.

9.      Venue is proper in this Court as the agreements and contracts at issue contain a forum selection clause for this District.

## FACTUAL ALLEGATIONS

### Estoppel Certificates

10.      Estoppel certificates are most commonly prepared when a property owner who is part of a CIC sells or refinances their home.  An estoppel certificate is also referred to by different names, such as estoppel letter, homeowner association letter, homeowner association status certificate, homeowner association closing statement or current dues letter.

11.     An estoppel certificate is used by a CIC to certify to a buyer or lender the amount of money that a property owner owes to the CIC.  An estoppel certificate provides notice of violations and payments due to be paid by an owner, the frequency of payments owed, among other information.  Any outstanding fees that have not been addressed by the date specified in the estoppel certificate will appear in that document.  Outstanding balances on an estoppel certificate include all of the fees that the property owner owes, such as current CIC fees, delinquent fees, interest payments, special assessments and attorneys' fees.

12.     Estoppel certificates thereby protect new buyers or lenders from undisclosed financial obligations to the CIC left by the property owner.  Estoppel certificates are particularly common to residential real estate transactions in Florida, which has among the highest concentration of homeowners' associations in the United States. Approximately twenty-five percent (25%) of homeowners in Florida belong to a homeowners' association, and nearly forty-five percent (45%) percent of all Florida residents—roughly 9.65 million Floridians—live in a homeowners' association community.[1]

### Uhlig's Business of Preparing Estoppel Certificates

13.     Uhlig operates CondoCerts.com and WelcomeLink.com (together, the "Uhlig Websites"), which are online resale and lending information ordering systems used by homeowners, CICs, managers of CICs, and real estate due diligence service companies such as PropLogix.  Among other services, the Uhlig Websites allow users to order estoppel certificates.

14.     CICs are required by Florida law to designate a person or entity on their website to

---

[1] *See* iProperyManagement, HOA Statistics (updated Oct. 9, 2022), *available at* https://ipropertymanagement.com/research/hoa-statistics#florida (last visited March. 1, 2023).  By contrast, just under 11% of the population of Kansas, where Uhlig has its principal place of business, lives in a homeowners' association community. *See id.*, https://ipropertymanagement.com/research/hoa-statistics#kansas (last visited March. 1, 2023).

receive requests for estoppel certificates.  That designee can also be designated to complete the estoppel certificate and provide it to the requester.

15.     Many CICs within Florida have, either directly or through their management companies, designated Uhlig to be their designee for receiving requests for estoppel certificates, and Uhlig provides those certificates on behalf of the CIC through the Uhlig Websites.

16.     Florida statutes specifically requires that a CIC or its designee, purportedly such as Uhlig, provide an estoppel certificate within ten (10) business days of receiving a written or electronic request for the estoppel certificate from a property owner, a property mortgagee or their respective designees, such as PropLogix.

17     When Uhlig, as a CIC's designee, receives a request for an estoppel certificate for a property within that CIC, Florida law requires Uhlig to provide the certificate within ten (10) business days, just as if the request were made directly to the CIC.

18.     Any delay in providing the estoppel certificate beyond the required ten (10) business days can delay or frustrate the ability of purchasers or lenders to close on the sale or refinancing of the subject property.

### PropLogix's Business

18.     PropLogix generally provides services related to transactions involving CIC properties via multiple platforms.

19.     As one of PropLogix's service offerings, title agents, real estate attorneys, property owners, lenders and other parties requiring due diligence, research and other services for closing on the purchase/sale or refinance transactions involving CIC properties—including the ordering of estoppel certificates—engage PropLogix to perform these real estate due diligence services rather than engaging in the services themselves (each, a "Due Diligence Customer").

20.     PropLogix also maintains a website, Estoppels.com, through which parties can order and obtain estoppel certificates for properties in a CIC that engages (directly or through its property management company) Estoppels.com as its property information management platform (an "Estoppels.com Property").

21.     Estoppels.com is a direct competitor of the Uhlig Websites.

**Process for Ordering Estoppel Certificates**

22.     Through Estoppels.com, customers are able to order an estoppel certificate for an Estoppels.com Property.  The property management company or CIC fulfills the estoppel request and transmits it to the customer through the Estoppels.com platform.  The property management company or CIC charges the customer, through the Estoppels.com platform, for its preparation and delivery of the estoppel certificate.  Estoppels.com charges a credit card/processing fee, similar to that of its competitors, including the Uhlig Websites.

23.     Separate from its Estoppels.com platform, PropLogix, in fulfilling its real estate due diligence services, must research and order an estoppel certificate as required by the CIC, whether through Estoppels.com, one of the Uhlig Websites, a similar competitor, or directly from the property management company or CIC.

24.     In doing so, PropLogix fronts the costs for its Due Diligence Customers, as charged by the property management company or CIC, and the platform used to access the estoppel certificate.

25.     PropLogix charges its Due Diligence Customer a separate fee, which is determined at the time of the Due Diligence Customer onboarding as a PropLogix customer, for its services in connection with researching the applicable CIC(s) and property management company(ies), determining the method for ordering estoppels from the same, ordering the estoppel certificate(s),

and following up to ensure timely delivery of the estoppel certificate(s).

26.     PropLogix has no input or control over how or whether the Due Diligence Customer charges or allocates these costs to its customer.

27.     In this regard, hundreds of CICs—comprising thousands of properties throughout Florida—have designated Uhlig to receive requests for estoppel certificates on their behalf.

28.     For years, PropLogix has ordered estoppel certificates through the appropriate Uhlig Website on behalf of its Due Diligence Customers.

29.     The above-described fee between PropLogix and its Due Diligence Customer is for the PropLogix services furnished to the Due Diligence Customer.

30.     PropLogix does not "upcharge" for any estoppel certificate, including those provided by Uhlig.  All fees charged by Uhlig and the CIC or its property management company are paid in full to those entities, respectively.

31.     PropLogix does not alter any estoppel certificates obtained from the Uhlig Websites or other third parties.

32.     PropLogix does not re-purpose or re-use or re-sell the information provided in ordered estoppel certificates; each estoppel certificate is ordered and furnished specifically in connection with an underlying real estate purchase/sale or refinance transaction involving CIC properties, and the estoppel certificate is delivered to its Due Diligence Customer for that purpose only.

33.     Title industry professionals such as title agents and real estate attorneys rely upon the real estate due diligence services provided by businesses like PropLogix, which are both necessary and commonplace in facilitating transactions involving CIC properties.

**Uhlig Wrongfully Denies PropLogix's Access to Estoppel Certificate Information**

34.     In November 2022, Uhlig blocked PropLogix from ordering estoppel certificates from the Uhlig Websites, under the erroneous premise that PropLogix was improperly requesting CIC Information via the Uhlig Websites in order to "commercialize" that data, e.g., store, re-use, and resell the data to customers for a fee.

35.     Since that time, PropLogix has had no contractual privity with Uhlig, has not been able to order estoppel certificates on properties in CICs that contract with Uhlig to act as its designee, and has informed Uhlig that Uhlig's premise is incorrect.

36.     PropLogix has further informed Uhlig that PropLogix has been ordering estoppel certificates via the Uhlig Websites under agreement with its Due Diligence Customers as the authorized designee of the property owner or mortgagee, consistent with Florida statute.

37.     PropLogix has informed Uhlig that its doing so is consistent with Uhlig's own Terms of Use, Subscription Agreement, and Order Agreements, which allow for designees of the property owner or lender to order estoppel certificates from the Uhlig Websites.

38.     PropLogix has further notified Uhlig that it is not up-charging any costs assessed by Uhlig for ordering estoppel certificates from the Uhlig Websites and, moreover, that its services are simply due diligence services that a title agent could undertake itself but, instead, outsources to PropLogix and many other businesses like it.

**Uhlig's Unfair Trade Practices and Resulting Harm to PropLogix and Consumers**

39.     The property management companies and CICs possess the necessary information to prepare the estoppel certificates and, ultimately, CICs are responsible for preparing and providing estoppel certificates within ten (10) business days upon receipt of written or electronic request.

40.     In light of Uhlig's refusal to fulfill orders from PropLogix and the detrimental

impact it is having on PropLogix's ability to serve its Due Diligence Customers, PropLogix has begun to request estoppel certificates directly from property management companies as representatives of the CICs, which have a statutory duty to provide the estoppel certificates.

41.     However, Uhlig has unlawfully frustrated even that effort by taking the erroneous position, *when dealing with PropLogix only*, that PropLogix can only obtain estoppel certificates from Uhlig and not the CICs ultimately responsible for providing the certificates.

42.     Uhlig has instructed its property management companies and their CIC customers not to respond to PropLogix's direct requests in order to position itself to be the *only means* through which PropLogix can obtain estoppel certificates for relevant transactions involving CIC properties, contrary to Florida law.

43.     Uhlig erroneously asserts that it owns the information needed for estoppel certificates—CIC data that it resells—while insisting that PropLogix order estoppel certificates only from it.

44.     Uhlig has informed PropLogix that it will only fulfill estoppel certificate orders under the terms and conditions that it set *solely* for PropLogix.

45.     Uhlig has arbitrarily insisted that PropLogix complete *its desired intake form*, entitled *Request for Certification as Parcel/Unit Owner Designee or Parcel/Unit Owner Mortgagee Designee* (herein "form" or "intake form"), as a condition to accepting an order for estoppel certificates from PropLogix.

46.     Crucially, this form requires the disclosure of PropLogix's confidential and proprietary information as to its pricing.

47.     Uhlig is using this information and its ability to unilaterally withhold estoppel certificates for its CICs in order to gather information on PropLogix's business model and revenue,

and also to extract an additional payment from PropLogix in order to obtain estoppel certificates through it.

48.     Uhlig is also demanding private information on property owners and mortgagees on its intake form, in exchange for PropLogix's access to estoppel certificates. PropLogix is reluctant to provide this information for at least three reasons: (1) to protect these parties' privacy (particularly with respect to individual property owners); (2) direct contact with these parties— particularly individual property owners/sellers—will confuse them and harm PropLogix's relationship with its Due Diligence Customers; and (3) this condition will incur significant friction and also delay in the title closing process for the subject properties.

49.     None of the information that Uhlig requests in the intake form it is demanding that PropLogix use is required under Florida law.

50.     Uhlig's desired intake form also imposes liability on PropLogix's customers with respect to the information that they provide and also requires them to consent to Uhlig using their personal information, none of which is required under Florida law.

51.     PropLogix has confirmed that Uhlig is only requiring the use of the intake form and is only requiring the information sought therein from PropLogix, and not from any other platforms or businesses or competitors who place orders for estoppel certificates through the Uhlig Websites.

52.     PropLogix has reached out to many of its customers, including thirteen (13) of its largest customers with many of them having multiple offices, to ask if the customer will agree to PropLogix utilizing the new intake form requirement demanded by Uhlig to make requests for estoppel certificates and other due diligence services through the Uhlig Websites, and PropLogix has received the following responses from these customers: that any intake form requirement involving the seller is not satisfactory; that the customer will not wait for the sellers to engage; that

the intake form is not a viable option for how the customer does business; that the customer has concerns with getting the seller involved in the process and the added time to the ordering process; that the customer does not want anyone calling their seller—no forms or calls; that the customer will not allow the intake form; that the customer will just order estoppel certificates themselves, and not through a form or call to their seller; among other negative responses.

53.    PropLogix has specifically tested Uhlig's demanded intake form process, and found that it is very time consuming and has caused friction and issues with PropLogix's customers.  As noted *supra*, many PropLogix customers have responded that having Uhlig contact the customers' sellers to confirm the information on Uhlig's intake form is simply not an option.  Such customers have advised PropLogix that if the customers' sellers must be personally contacted by Uhlig just to verify that PropLogix is a "designee" authorized to request an estoppel certificate on behalf of the seller, the customer will move its business away from PropLogix to a competitor.

54.    PropLogix has also heard from several of its customers that the customer cannot continue to endeavor abiding by Uhlig's prohibitory intake form process for much longer, and that the customers will need to move their business including the lien search business to PropLogix's competitors.

55.    Uhlig's requirement that PropLogix follow Uhlig's arbitrary and prohibitory intake form process has had an impact to filings for fifteen (15) percent of PropLogix's business since November 2022, and impacted thirty-three (33) management companies representing 689 HOAs to date.

56.    Since November 2022, PropLogix has lost eleven (11) customers, costing PropLogix nearly twenty (20) orders per day per customer, at an average revenue of $95.00 per order; PropLogix's lost revenue from these lost customers is estimated at over $200,000.00 to date.

The annualized estimated revenue lost will exceed $450,000.00.

57.     PropLogix is currently on track to lose over one million dollars ($1,000,000.00) in revenue this year from previously lost customers.

58.     Based upon conversations PropLogix has had with its two of its largest existing customers, for whom Uhlig's demanded intake form process is not desirable, the potential lost revenue PropLogix will incur if it loses these customers' business is in the range of several million dollars.

59.     Uhlig's rationale for insisting that PropLogix complete the arbitrary, prohibitive intake form process prior to fulfilling PropLogix's orders reveals Uhlig's wrongful intent: Uhlig claims it requires PropLogix to use its intake form because it allows Uhlig to "verify the order" for the protection of property owners/sellers.

60.     Yet, for years PropLogix has ordered estoppel certificates via the Uhlig Websites and, in that time, there have been only a few instances in which property management companies or CICs that use the Uhlig Websites have asked PropLogix to confirm that it is a designee of the property owner or mortgagee.  In these rare instances, Uhlig accepted PropLogix's own seller-signed authorization form, which differs drastically from the intake form now required by Uhlig.

61.     Uhlig's actions are intentionally and specifically targeting PropLogix only, and causing harm to its ability to provide services and solutions to its customers on a timely basis, as evidenced by the fact that many other third-party designees of title agents, property owners, lenders, real estate attorneys and other consumers continue using Uhlig's Websites without restriction.

62.     Uhlig's conduct is intended to specifically place PropLogix into the dilemma of either disclosing its confidential and proprietary information about its business and private

information of customers to Uhlig (and even if PropLogix did so, create significant friction and delay only for PropLogix Due Diligence Clients, thereby putting PropLogix in a competitively disadvantageous position) or, in the alternative, lose its customers or refer out that line of business—all for Uhlig to ultimately attract additional customers and payments for estoppel certificates, and to harm PropLogix.

63.     Uhlig's targeted actions have impacted and interfered with PropLogix's known business relationships and its reputation with the real estate industry and with its Due Diligence Customers. PropLogix has lost customers for which it provided a variety of real estate due diligence services and is unable to order estoppel certificates for CICs whose property managers contract with Uhlig.

64.     Uhlig's actions have caused PropLogix to lose goodwill and its reputation with its current and former customers because they are now aware that PropLogix can no longer acquire estoppel certificates for thousands of properties in Florida and other states.

## COUNT I
### Tortious Interference with Business Relationships

65.     PropLogix repeats, realleges and incorporates by reference the allegations contained within paragraphs 1-64 of its Counterclaim as though fully reproduced herein.

66.     PropLogix has advantageous existing or prospective business relationships with title agents, real estate attorneys, and other consumers who rely on PropLogix to provide services related to CIC Information, including but not limited to, the obtaining of estoppel certificates in conjunction with purchase/sale or refinance real estate transactions.

67.     PropLogix's Due Diligence Customers submit statements of work for PropLogix to provide services related to CIC Information upon request, including but not limited to, the obtaining of estoppel certificates.  Many of these business relationships are longstanding and

governed by a course of dealing in which PropLogix could order estoppel certificates through the Uhlig Websites.

68.     Uhlig has knowledge of PropLogix's existing or prospective business relationships with title agents, real estate attorneys, and other consumers, particularly know that such information is disclosed on the very intake forms that Uhlig requires PropLogix to use.

69.     As described above, Uhlig has intentionally and unjustifiably interfered with PropLogix's existing or prospective business relationships with title agents, real estate attorneys, and other consumers to provide services related to CIC Information, including but not limited to, the obtaining of estoppel certificates under Florida law.

70.     Uhlig has no justification for interfering with PropLogix's existing or prospective business relationships.

71.     Uhlig's lack of justification is apparent because the CICs for which Uhlig is a designee are obligated under Florida law to provide estoppel certificates within ten (10) business days of receipt of a request from PropLogix.

72.     Uhlig's lack of justification is apparent in that Uhlig is aware that its own Terms of Use, Subscription Agreement and Order Agreements allow for designees of customers to order estoppel certificates from its websites.

73.     Uhlig's lack of justification is further apparent in that it has told PropLogix that it seeks to have PropLogix's existing or prospective Due Diligence Customers deal directly with Uhlig, rather than PropLogix.

74.     Uhlig designed its actions specifically to harm PropLogix despite the fact that other third party due diligence service providers continue to order estoppel certificates from Uhlig, further demonstrating Uhlig's lack of justification for its tortious activity.

75.     Uhlig's actions were and are malicious, wanton and willful, and PropLogix has been damaged as a result of Uhlig's interference with its existing or prospective business relationships.

76.     PropLogix's damages include, but are not limited to, loss of customers for the ordering of estoppel certificates, a loss of revenue and loss of goodwill and reputation with its current and former Due Diligence Customers.

77.     PropLogix is entitled to recover damages in an amount to be determined at trial and in excess of $75,000, together with attorneys' fees and costs.

WHEREFORE, Defendant/Counterclaim Plaintiff, PropLogix, LLC, respectfully prays that this Honorable Court enter judgment in its favor and against Plaintiff/Counterclaim Defendant, Uhlig LLC d/b/a CondoCerts™ and WelcomeLink®, including injunctive relief, the recovery of damages in excess of $75,000, its attorneys' fees and costs, punitive damages and for such other and further relief as this Court deems just and proper.

### COUNT II
**Violations of the Florida Deceptive and Unfair Trade Practices Act,
Florida Statute § 501.201, *et seq.***

78.     PropLogix repeats, realleges and incorporates by reference the allegations contained within paragraphs 1-77 of its Counterclaim as though fully reproduced herein.

79.     A stated purpose of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.*, is to protect legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts of practices in the conduct of any trade or commerce.

80.     PropLogix is an "interested party or person" as defined by the FDUTPA because it is affected by Uhlig's unfair acts and practices, as discussed in this statute.

81.    PropLogix is a "consumer" within meaning of the FDUTPA when ordering estoppel certificates via the Uhlig Websites.

82.    Uhlig and/or the Uhlig Websites' receipt of orders for estoppel certificates, the provision of estoppel certificates and the provision of other services related to CICs constitute "trade or commerce" under the FDUTPA.

83.    As described above, Uhlig has engaged in continued unfair and anticompetitive practices by blocking PropLogix's access to the Uhlig Websites and ending any contractual relationship with PropLogix.

84.    Uhlig is specifically targeting PropLogix's business and preventing PropLogix from providing real estate due diligence services; specifically, obtaining estoppel certificates from a significant number of CICs.

85.    Uhlig is doing so in an attempt to learn more about PropLogix's pricing information and to either extract a payment from PropLogix or destroy PropLogix's business, in violation of § 501.204 of the FDUTPA.

86.    PropLogix has lost customers and revenue due to Uhlig's unfair and anticompetitive practices.

87.    Unless and until Uhlig permits PropLogix to resume its access to the Uhlig Websites, and without the use of the arbitrary and prohibitive intake forms, just as Uhlig permits all *other* companies like PropLogix, the likelihood of future injury to PropLogix is significant in that PropLogix frequently receives requests from its Due Diligence Customers regarding properties in the State of Florida for which Uhlig is the purported designee of the CIC.

88.    PropLogix will further suffer future injury given that its Due Diligence Customers have already confirmed that millions of dollars in revenue will be lost if and when the Due

Diligence Customers pull their business from PropLogix due to Uhlig's unsustainable, prohibitory intake form requirement.

89.     Uhlig's actions directly violate the Florida statutes governing condominium and homeowners' associations.

90.     Uhlig, as a purported designee of CICs, is required to fulfill orders for estoppel certificates within ten (10) business days after PropLogix has requested them.

91.     Uhlig has refused to do so in furtherance of its acts against PropLogix and will continue to refuse these orders.

92.     Uhlig's refusals are further placing the CICs, for which it serves as the statutory designee, at risk of failing to timely issue estoppel certificates in violation of Florida law.

93.     Uhlig's actions also offend public policy and are unethical, unscrupulous and injurious to consumers in that Uhlig's refusal to conduct business with PropLogix, a "consumer" for ordering estoppel certificates, is making it more difficult for title agents and others involved in transactions with CIC properties to obtain estoppel certificates within the ten (10) business day time frame required under Florida law.

94.     Fla. Sta. §§ 501.211 and 501.2105 authorize PropLogix to bring a civil action to redress injuries to consumers and unfair competition resulting from Uhlig's violations of the FDUTPA, including declaratory relief, injunctive relief and the recovery of damages in an amount to be determined at trial and in excess of $75,000, together with its attorneys' fees and costs.

WHEREFORE, Defendant/Counterclaim Plaintiff, PropLogix, LLC, respectfully prays that this Honorable Court enter judgment in its favor and against Plaintiff/Counterclaim Defendant, Uhlig LLC d/b/a CondoCerts™ and WelcomeLink®, including injunctive relief and the recovery of damages in excess of $75,000, for its attorneys' fees and costs, for punitive damages and for

such other and further relief as this Court deems just and proper.

## COUNT III
### Declaratory Judgment Pursuant to 28 U.S.C. § 2201

95.     PropLogix repeats, realleges and incorporates by reference the allegations

contained within paragraphs 1-94 of its Counterclaim as though fully reproduced herein.

96.     The Florida Homeowners' Association Act provides, in relevant part:

> "Within 10 business days after receiving a written or electronic request
> for an estoppel certificate from a parcel owner or the parcel owner's
> *designee,* or a parcel mortgagee or the parcel mortgagee's designee, the
> association *shall issue* the estoppel certificate. Each association shall
> designate on its website a person or entity with a street or e-mail address
> for receipt of a request for an estoppel certificate issued pursuant to this
> section.  The estoppel certificate must be provided by hand delivery,
> regular mail, or e-mail to the requestor on the date of issuance of the
> estoppel certificate."

Fla. Stat. § 720.30851 (emphasis added); *see also* Florida's Condominium Act, Fla. Stat. §
718.116(8).

97.     PropLogix and Uhlig have a dispute regarding an adverse interest between them as

to whether (i) PropLogix is a proper designee to order estoppel certificates for sellers and lenders

under Florida law; and (ii) Uhlig is a proper designee of CICs with an obligation to provide

estoppel certificates to PropLogix within ten business days of receipt of a request for an estoppel

certificate under Fla. Stat. §§ 720.30851 and 718.116(8).

98.     PropLogix is a proper designee under Fla. Stat. §§ 720.30851 and 718.116(8), and

Uhlig has refused to abide by its obligations under these statutes as the designee of CICs.

99.     The controversy between PropLogix and Uhlig is real and immediate.

100.    As set forth, *supra*, PropLogix has been injured and will continue to be injured by

Uhlig's refusal to comply with its obligation to provide estoppel certificates under Florida statutes.

101.    PropLogix is entitled to have the doubt removed regarding Uhlig's compliance with

Fla. Stat. §§ 720.30851 and 718.116(8), and declaratory relief is appropriate.

WHEREFORE Defendant/Counterclaim Plaintiff, PropLogix, LLC, respectfully requests that this Honorable Court enter judgment in its favor and against Plaintiff/Counterclaim Defendant, Uhlig LLC d/b/a CondoCerts™ and WelcomeLink®, as follows:

a) Judgment that Uhlig has violated FDUTPA by: (i) prohibiting PropLogix's ability to obtain estoppel certificates and other due diligence information with respect to a property or CIC; and, (ii) refusing to provide PropLogix with estoppel certificates consistent with Uhlig's obligation as a designee of CICs to do so under Florida law, including Fla. Stat. §§ 720.30851 and 718.116(8);

b) Declare that Uhlig is obligated to provide estoppel certificates to PropLogix consistent with Uhlig's obligation to do so as designee under Fla. Stat. §§ 720.30851 and 718.116(8);

c) Enter a permanent injunction to prevent future violations by Uhlig of FDUTPA and/or Fla. Stat. §§ 720.30851 and 718.116(8) with respect to Uhlig's provision of estoppel certificates to PropLogix, including enjoining Uhlig from requiring PropLogix to use Uhlig's arbitrary and prohibitive intake form process;

d) Award damages, in excess of $75,000 and in an amount to be proven at trial;

e) Award punitive damages as permitted by law;

f) Award attorneys' fees and costs pursuant to §§ 501.2105 and 501.211 of FDUTPA or as otherwise permitted by law;

g) Award pre-judgment and post-judgment interest; and

h) Grant such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

PropLogix respectfully requests and demands a trial by jury of all issues so triable.

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

By:     /s/ Jordon T. Stanley
        Jordon T. Stanley, #21990 KS
        211 North Broadway, Suite 2150
        St. Louis, Missouri 63102
        Tel: (314) 961-6686
        Fax: (314) 338-3076
        jstanley@grsm.com
        *Counsel for Defendant*
        *Proplogix, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court on June 14, 2023, thereby executing service upon all counsel of record by operation of the Court's electronic filing system.

  /s/ Jordon T. Stanley