IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UHLIG, LLC d/b/a CONDOCERTS<sup>TM</sup> and WELCOMELINK®, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION |
| v. | ) ) | No. 22-2475-KHV |
| PROPLOGIX, LLC, | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM AND ORDER

Uhlig LLC d/b/a CondoCerts<sup>TM</sup> and d/b/a WelcomeLink® brings suit against PropLogix, LLC, alleging breach of contract, unjust enrichment, fraud, tortious interference with business relationships and deceptive and unfair competition. Defendant brings counterclaims for tortious interference with business relationships, deceptive and unfair competition and declaratory relief. This matter is before the Court on plaintiff's Motion To Dismiss Counterclaims (Doc. #83) filed June 26, 2023. For reasons stated below, the Court overrules plaintiff's motion.

## Legal Standards

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible–not merely conceivable—on its face. Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To determine whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions.

See id. at 678.  In bringing a counterclaim, defendant makes a facially plausible claim when it pleads factual content from which the Court can reasonably infer that plaintiff is liable for the misconduct alleged.  Id.  However, defendant must show more than a sheer possibility that plaintiff has acted unlawfully—it is not enough to plead facts that are "merely consistent with" liability.  Id. (quoting Twombly, 550 U.S. at 557).  A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand.  Id.  Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not "shown"—that the pleader is entitled to relief.  Id. at 679.

### Factual Background

Highly summarized, PropLogix's counterclaim alleges as follows:

In common interest residential communities ("CICs") such as homeowner associations, condominiums and co-ops, real property deeds may be encumbered by obligations to the CIC.  When a property owner sells or refinances a property, the owner, buyer or lender often must obtain an "estoppel certificate," which indicates any outstanding monetary obligation to the CIC.  In Florida, within ten days of a request from the owner, mortgagee or designee of the owner or mortgagee, a CIC must provide an estoppel certificate.  See Fla. Stat. § 720.30851, § 718.116(8).

Uhlig is a national provider of estoppel certificates for its clients, which include various CICs in Florida.  Uhlig provides such certificates for its client's properties to parties such as property buyers, lenders and real estate due diligence service companies.

PropLogix is a real estate due diligence service company.  As part of its services, it obtains estoppel certificates for customers including title agents, real estate attorneys, property owners and lenders.  For years, PropLogix has used online platforms, including Uhlig's web sites, to obtain

estoppel certificates. If PropLogix needs to obtain an estoppel certificate for a property in a CIC represented by Uhlig, PropLogix must use one of Uhlig's web sites to obtain the certificate.

When PropLogix obtains an estoppel certificate for a customer, it fronts the fee charged by Uhlig or other suppliers. PropLogix then charges its customer a fee, which includes its services to research the CIC and property management company and to obtain the estoppel certificate.

Beginning in November of 2022, based on the erroneous premise that PropLogix was improperly requesting CIC information from Uhlig web sites in order to "commercialize" that data, e.g., store, re-use, and resell the data to customers for a fee, Uhlig unjustifiably blocked PropLogix from ordering estoppel certificates from Uhlig. Defendant PropLogix, LLC's First Amended Answer To Plaintiff's Second Amended Complaint And Jury Demand, And Counterclaim (Doc. #76) filed June 14, 2023 ("Answer And Counterclaim") at 19, 25.

PropLogix informed Uhlig that it requested estoppel certificates as the authorized designee of the property owner or mortgagee and that it did not up-charge the fee that Uhlig assesses PropLogix. Id. at 19. Even so, to obtain an estoppel certificate from Uhlig, PropLogix (but no other customers) now must complete an intake form which requires disclosure of confidential and proprietary information about its pricing. Id. at 20–21. The form states that PropLogix customers will be liable for any incorrect information that they provide on the form and that they must consent to Uhlig using their personal information. Id. at 21. Uhlig uses information from the form and its ability to unilaterally withhold estoppel certificates to prevent PropLogix from providing real estate due diligence services to its clients, to attempt to learn more about its pricing information and to either extract a payment from it or destroy its business. Id. at 20–21, 27.

After Uhlig imposed the intake form requirement, PropLogix began to request estoppel certificates directly from Uhlig clients. Uhlig instructed its clients not to respond to such requests

so that PropLogix could only obtain estoppel certificates directly through Uhlig.

PropLogix customers expressed dissatisfaction with Uhlig's intake form. Many customers have advised PropLogix that if Uhlig must personally contact the seller to verify that PropLogix is an authorized designee, they will move their business to a competitor. Id. at 22. From November of 2022 until June of 2023, PropLogix has lost 11 customers and some $200,000 in revenue. Id.

On November 21, 2022, Uhlig filed suit against PropLogix, alleging breach of contract, unjust enrichment, fraud, tortious interference with business relationships and deceptive and unfair competition in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq. PropLogix brings counterclaims for tortious interference with business relationships, violations of FDUTPA and declaratory judgment.

## Analysis

Uhlig seeks to dismiss PropLogix's counterclaims for failure to state a claim on which relief can be granted. The Court addresses each claim in turn.

**I.     Counterclaim For Tortious Interference With Business Relationships**

Uhlig argues that PropLogix has not stated a claim for tortious interference with the business relationships between PropLogix and its customers. Initially, the Court addresses what state law applies to PropLogix's claim. A federal court sitting in diversity applies the choice of law rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). In tort cases, Kansas courts apply the law of the state where the wrong occurred, i.e. where the claimant suffered injury. Ling v. Jan's Liquors, 237 Kan. 629, 634, 703 P.2d 731, 735 (1985).

The parties do not dispute that PropLogix's alleged injuries occurred in Florida. In addition, PropLogix alleges that its injuries stem from its inability to obtain estoppel certificates which it is entitled to receive under Florida statute. For these reasons and because the parties have

-4-

not argued that any other state's law potentially applies, the Court applies Florida law.

To state a claim for tortious interference with a business relationship under Florida law, the claimant must show (1) the existence of a business relationship or contract between claimant and a third party; (2) defendant knew of the business relationship or contract; (3) defendant intentionally and unjustifiably interfered with the business relationship or procured a breach of the contract; and (4) claimant sustained damage.  Howard v. Murray, 184 So.3d 1155, 1166 (Fla. Dist. Ct. App. 2015).  As to the third element, because a party cannot unjustifiably interfere with its own relationship, the claimant must show that the defendant is not a party to the business relationship or it has any beneficial or economic interest in, or control over, that relationship.  Astro Tel, Inc. v. Verizon Fla., LLC, 979 F. Supp. 2d 1284, 1300 (M.D. Fla. 2013); see Bridge Fin., Inc. v. J. Fischer & Assocs., Inc., 310 So. 3d 45, 50 (Fla. Dist. Ct. App. 2020).

Uhlig argues that PropLogix's claim for tortious interference with a business relationship does not state a claim because (1) PropLogix has alleged facts which establish that Uhlig was part of the business relationship between PropLogix and its customers and (2) PropLogix has not alleged facts to establish that Uhlig's conduct was unjustified.  As explained below, PropLogix has adequately pled a claim against Uhlig for tortious interference with a business relationship.

A.     Whether PropLogix Has Alleged That Uhlig Was Part Of Business Relationship

Uhlig argues that because PropLogix's counterclaim alleges facts which establish that Uhlig was part of the business relationship between PropLogix and its customers, Uhlig cannot be liable for tortious interference with that relationship.  See Memorandum In Support Of Motion To Dismiss Counterclaims (Doc. #84) at 9.  PropLogix argues that it has only alleged facts which establish that Uhlig was a provider of estoppel certificates, which is insufficient to establish that Uhlig is part of the business relationship between PropLogix and its customers.

PropLogix alleges that beginning in November of 2022, based on the erroneous premise that it was improperly requesting CIC information from Uhlig in order to "commercialize" that data, e.g., store, re-use, and resell the data to customers for a fee, Uhlig unjustifiably blocked PropLogix from ordering estoppel certificates.  Answer And Counterclaim (Doc. #76) at 19, 25. To provide CIC information services to its customers, PropLogix relies on Uhlig to provide estoppel certificates.  See id. at 24–25.  Even so, PropLogix's reliance on Uhlig's continued services does not establish that Uhlig has a "supervisory interest in how the relationship [between PropLogix and its customers] is conducted or a potential financial interest in how [PropLogix's] contract [with its customers] is performed."  Palm Beach Cnty. Health Care Dist. v. Prof'l Med. Educ., Inc., 13 So.3d 1090, 1094 (Fla. Dist. Ct. App. 2009).  Because Uhlig is not a part of the business relationship between PropLogix and its customers, PropLogix can assert a claim against Uhlig for tortious interference with that relationship.[1]  The Court therefore overrules Uhlig's motion on this ground.

      B.      Whether PropLogix Has Alleged That Uhlig's Actions Were Unjustified

Uhlig argues that PropLogix alleges no facts which establish that Uhlig's actions were

---

[1] The Court rejects Uhlig's proposition that a party cannot tortiously interfere with a business relationship if it has "any connection" to that relationship.  Memorandum In Support Of Motion To Dismiss Counterclaims (Doc. #84) at 8.  A supplier necessarily has some tangential financial interest in the resale of its product or service.  Even so, such an indirect interest alone is insufficient to make the supplier part of every business relationship involving its product or service.  See Am. Nat. Title & Escrow of Fla., Inc. v. Guarantee Title & Tr. Co., 810 So. 2d 996, 999 (Fla. Dist. Ct. App. 2002) (contractual relationship between parties does not preclude tortious interference with separate business relationship); Scheller v. Am. Med. Int'l, Inc., 502 So.2d 1268, 1272 (Fla. Dist. Ct. App. 1987) (pathologist contract with hospital did not preclude claim that hospital tortiously interfered with pathologist relationships with physicians and patients); cf. Gunder's Auto Ctr. v. State Farm Mut. Auto. Ins. Co., 422 F. App'x 819, 822 (11th Cir. 2011) (because State Farm insured contractual party, it was not stranger to contractual relationship); Astro, 979 F. Supp. 2d at 1300 (defendant not stranger to business relationship where its services are "deeply entrenched" in very relationships claimant asserts defendant interfered with).

unjustified.  See Memorandum In Support Of Motion To Dismiss Counterclaims (Doc. #84) at 9. PropLogix must allege facts that Uhlig "acted without justification."  Duty Free Americas, Inc. v. Estee Lauder Cos., Inc., 797 F.3d 1248, 1280 (11th Cir. 2015) (quotation marks and citation omitted).  One way a party can act without justification is to employ "improper means."  Ethyl Corp. v. Balter, 386 So. 2d 1220, 1225 (Fla. Dist. Ct. App. 1980) (unless party employs improper means, activities taken to safeguard or promote own financial and contractual interests not actionable).  Ultimately, to determine whether a party's interference involved improper means, the factfinder considers the nature of defendant's conduct, defendant's motive, plaintiff's interests, the social interests in protecting defendant's freedom of action and plaintiff's contractual interests, the proximity of defendant's conduct to the interference and the relations between the parties. Seminole Tribe of Fla. v. Times Publ'g Co., 780 So. 2d 310, 315 (Fla. Dist. Ct. App. 2001) (citing Restatement (Second) of Torts § 767 cmt. b).

Uhlig argues that it had a legitimate reason to ask PropLogix for information to confirm that it was a designee of an owner or mortgagee.  On a motion to dismiss, however, the Court is limited to the factual allegations in the complaint.  PropLogix alleges that in the few instances in which Uhlig clients had asked PropLogix to confirm that it was a designee of the property owner or mortgagee, Uhlig accepted PropLogix's own seller-signed authorization form.  PropLogix alleges that (1) beginning in November of 2022, Uhlig instituted a new procedure that required PropLogix to complete a detailed intake form, (2) Uhlig has no justification for the new form which requires additional designee information beyond the information on PropLogix's form, (3) Uhlig has selectively imposed the requirement to prevent PropLogix from providing real estate due diligence services to its clients, to attempt to learn more about its pricing information and to either extract a payment from it or destroy its business and (4) PropLogix has lost and will lose

customers because of the new requirement.  Answer And Counterclaim (Doc. #76) at 25–27.  The Florida statutes on estoppel certificates do not specify what information a CIC agent like Uhlig can seek to confirm that a requesting party is an authorized "designee."  See Fla. Stat. § 720.30851 (permitting "designee" of owner of mortgagee to request estoppel certificate), Fla. Stat. § 718.116(8) (same).  Even so, PropLogix has stated particularized facts sufficient to support the reasonable inference that Uhlig's new intake form goes beyond its stated (or the statutory) purpose to confirm designee information and constitutes "improper means" to interfere with the business relationship between PropLogix and its customers.  Ethyl, 386 So. 2d at 1225.  The Court therefore overrules Uhlig's motion to dismiss this claim.

**II.    Counterclaim For Violation Of Florida Deceptive And Unfair Trade Practices Act**

Uhlig argues that PropLogix's counterclaim for violation of FDUTPA does not state a claim.  To establish a violation of FDUTPA, a claimant must establish (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.  Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006).  A "deceptive act or unfair practice" is broadly defined to include conduct that offends established public policy and is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  Id.

Uhlig argues that PropLogix has not alleged that Uhlig committed a deceptive or unfair trade practice.  Uhlig again emphasizes that it simply required PropLogix to establish that it was a designee of an owner or mortgagee, which it asserts is proper under Florida law.  As noted above, PropLogix alleges that for years, Uhlig accepted PropLogix's form to confirm that it was a "designee" under Florida law.  PropLogix further alleges that (1) beginning in November of 2022, Uhlig instituted a new procedure that required PropLogix to complete a detailed intake form, (2) Uhlig has no justification for the form which requires additional designee information beyond

the information on PropLogix's form, (3) Uhlig has selectively imposed the requirement to prevent PropLogix from providing real estate due diligence services to its clients, to attempt to learn more about its pricing information and to either extract a payment from it or destroy its business and (4) PropLogix has lost and will lose customers because of the new requirement.  See Answer And Counterclaim (Doc. #76) at 25–27.  In sum, PropLogix has stated particularized facts which support the reasonable inference that Uhlig's intake form requirement went beyond the information necessary to confirm that PropLogix was a valid designee and was "substantially injurious" to PropLogix as a consumer.  Rollins, 951 So. 2d at 869.  The Court therefore overrules Uhlig's motion to dismiss PropLogix's counterclaim for violation of FDUPTA.

### III.     Counterclaim For Declaratory Relief

PropLogix seeks a declaratory judgment that Uhlig violated FDUTPA and that Uhlig must provide estoppel certificates to PropLogix.  Uhlig argues that because PropLogix has not stated a claim that Uhlig violated FDUTPA, the Court should dismiss PropLogix's claim for declaratory relief.  As explained above, PropLogix has pleaded sufficient facts to state a claim under FDUTPA.  The Court therefore overrules Uhlig's motion to dismiss this claim.

**IT IS THERFORE ORDERED** that plaintiff's Motion To Dismiss Counterclaims (Doc. #83) filed June 26, 2023 is **OVERRULED**.

Dated this 28th day of August, 2023 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge