IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UHLIG, LLC d/b/a CONDOCERTS<sup>TM</sup> and WELCOMELINK®, )<br>)<br>)<br>Plaintiff, )<br>v. )<br>)<br>PROPLOGIX, LLC, )<br>)<br>Defendant. )<br>) | CIVIL ACTION<br><br>No. 22-2475-KHV |

**MEMORANDUM AND ORDER**

Uhlig LLC d/b/a CondoCerts$^{TM}$ and d/b/a WelcomeLink® brings suit against PropLogix, LLC. On October 3, 2023, the Court held an evidentiary hearing on Plaintiff's Motion For Temporary Restraining Order And Preliminary Injunction (Doc. #93) filed July 19, 2023 and PropLogix's Second Amended Motion For Temporary Restraining Order And Preliminary Injunction And Permanent Injunction (Doc. #119) filed September 1, 2023. At the conclusion of the hearing, counsel announced that the parties had reached an agreement which resolved the pending motions for injunctive relief. On October 26, 2023, the Court directed that the parties comply with the oral agreement as stated at the hearing. See Memorandum And Order (Doc. #168) at 3. On November 6, 2023, after a hearing, the Court held that the parties had not reached an enforceable oral agreement to resolve the pending motions for injunctive relief and do business as stated at the hearing on October 3, 2023. Order (Doc. #189) at 1. The Court therefore vacated its prior rulings in this regard and reinstated the parties' motions for injunctive relief. Id. For reasons stated below, the Court overrules both parties' motions for injunctive relief.

**Preliminary Injunction Standards**

Both parties seek a preliminary injunction.[1] The purpose of a preliminary injunction is "to preserve the status quo pending the outcome of the case." Tri–State Generation & Transmission Ass'n., Inc. v. Shoshone River Power, Inc., 805 F.2d 351, 355 (10th Cir. 1986). In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits. Id. Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal. Schrier v. Univ. of Colo., 427 F.3d 1253, 1258 (10th Cir. 2005). To obtain a preliminary injunction, the movant must establish that (1) it will suffer irreparable injury unless the preliminary injunction issues; (2) the threatened injury outweighs whatever damage the proposed preliminary injunction may cause the non-movant; (3) if issued, the preliminary injunction will not be adverse to the public interest; and (4) the movant is substantially likely to ultimately prevail on the merits of its claims. Tri-State, 805 F.2d at 355. If the moving parties demonstrate that the first three factors "tip strongly" in their favor, the test is modified and the moving parties "may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue for litigation and deserving of more deliberate investigation." Okla. ex rel. Okla. Tax Comm'n v. Int'l Registration Plan, Inc., 455 F.3d 1107, 1113 (10th Cir. 2006).

**Factual Background**

In a common interest residential community ("CIC") such as a homeowner association,

---

[1] Both parties also seek a temporary restraining order. A temporary restraining order is an emergency remedy, which is reserved for exceptional circumstances and lasts only until the Court can hear arguments and evidence regarding the controversy. West v. Derby Unified Sch. Dist. No. 260, 23 F. Supp. 2d 1220, 1221–22 (D. Kan. 1998); see Fed. R. Civ. P. 65(b). Because the parties have received notice and had an opportunity to present argument and evidence, their requests for a temporary restraining order are moot.

condominium or co-op, real property deeds may be encumbered by obligations to the CIC. When a property owner sells or refinances a property, the owner, buyer, lender, title company or real estate attorney often must obtain an "estoppel certificate," which indicates any outstanding monetary obligation to the CIC. In Florida, within ten days of a request from the owner, mortgagee (i.e. lender) or designee of the owner or lender, a CIC or its authorized agent must provide an estoppel certificate. See Fla. Stat. §§ 718.116(8), 720.30851.

Uhlig is a national provider of estoppel certificates for its clients, which include various CICs in Florida. Uhlig provides such certificates for client properties to parties such as property buyers, lenders, title companies and real estate due diligence service companies.

PropLogix is a real estate due diligence service company. Its customers are primarily title companies and real estate attorneys.[2] In 2010, PropLogix began as a company that provided municipal lien searches. In part because of a shortage of title agents, PropLogix clients eventually asked it to also obtain estoppel certificates for real estate transactions. Since at least 2016, PropLogix has used online platforms, including Uhlig web sites, to obtain estoppel certificates.

In real estate transactions, the buyers and sellers often hire title companies and real estate attorneys to perform various due diligence services. In turn, these companies or individuals often contract with third parties such as PropLogix to perform limited services including lien searches and obtaining estoppel certificates. Frequently, the buyer or seller does not know whether the title company or real estate attorney has hired contractors and if so, the names of those contractors. As a result, PropLogix may not have a direct relationship with the buyer or seller of a property. In these circumstances, when PropLogix requests an estoppel certificate from Uhlig, it acts as an

---

[2] PropLogix rarely has clients who are lenders or property owners.

agent of the title company or real estate attorney.  PropLogix has ordered and received some 30,000 estoppel certificates from Uhlig at a cost of some eight million dollars.  Uhlig has presented no evidence that PropLogix ever requested an estoppel certificate when it was not an authorized agent or subagent of a title company, real estate attorney or some other authorized designee of the property owner or lender.

When PropLogix obtains an estoppel certificate for a customer, it fronts the fee which Uhlig or other suppliers charge.  PropLogix passes that charge to its customer and also charges for its services in researching the CIC and property management company, obtaining the estoppel certificate, preparing a cover page which provides a summary of the estoppel certificate and delivering the cover page and estoppel certificate to the customer.

Beginning November 22, 2022, based on Uhlig's opinion that PropLogix was improperly requesting CIC information from Uhlig web sites in order to "commercialize" that data, e.g., store, re-use and resell the data to customers for a fee, Uhlig blocked PropLogix from ordering its estoppel certificates on line.  As a result, to obtain an estoppel certificate from Uhlig, PropLogix—but no other customers of Uhlig—must complete a paper intake form which requires disclosure of its fee and detailed contact information for the property owner including the best time to contact the owner and numbers for the owner's office phone, home phone and mobile phone.  The form states that PropLogix customers will be liable for any incorrect information that they provide on the form and requires that they consent to Uhlig using their personal information.  PropLogix alleges that Uhlig uses information from the form and its ability to unilaterally withhold estoppel certificates to prevent PropLogix from providing real estate due diligence services to its clients, to attempt to learn more about its pricing information and to either extract a payment from it or destroy its business.

After Uhlig imposed the paper intake form requirement, PropLogix began to request estoppel certificates directly from Uhlig clients. Uhlig instructed its clients not to respond to such requests, so PropLogix could only obtain estoppel certificates directly through Uhlig. To circumvent this restriction, PropLogix hired third parties to submit online requests for estoppel certificates from Uhlig. Uhlig discovered that these third parties were acting on behalf of PropLogix and terminated their access to Uhlig web sites.

PropLogix customers expressed dissatisfaction with Uhlig's paper intake form. Many customers advised PropLogix that if Uhlig intended to personally contact sellers to verify that PropLogix was their authorized designee, they would move their business to a competitor of PropLogix. PropLogix estimates that from November of 2022 until June of 2023, because of Uhlig's paper intake form requirement, PropLogix has lost 11 customers and some $200,000 in revenue.

On November 21, 2022, Uhlig filed suit against PropLogix, alleging breach of contract, unjust enrichment, fraud, tortious interference with business relationships and deceptive and unfair competition in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq. PropLogix brings counterclaims for tortious interference with business relationships, violations of the FDUTPA and declaratory judgment.

Uhlig asks the Court to enjoin PropLogix (including its employees, representatives, owners, agents, assigns and contractors) from directly or indirectly placing orders for estoppel certificates on Uhlig's CondoCerts™ and WelcomeLink® web sites, including through the use of third parties. Plaintiff's Motion For Temporary Restraining Order And Preliminary Injunction (Doc. #93) at 1; Memorandum In Support Of Plaintiff's Motion For Temporary Restraining Order And Preliminary Injunction (Doc. #94) filed July 19, 2023 at 6, 19. In other words, Uhlig seeks

an injunction which requires PropLogix to cease asking for estoppel certificates or use Uhlig's paper intake form to order them.  Uhlig also asks the Court to enjoin PropLogix from (1) filing ancillary lawsuits against Uhlig and its clients that involve substantially the same relief sought in this litigation and (2) utilizing Uhlig customer lists that PropLogix has "reverse engineered" to contact Uhlig customers.  Plaintiff's Supplement To Its Motion For Temporary Restraining Order And Preliminary Injunction (Doc. #136) filed September 27, 2023 at 4.

PropLogix asks the Court to enjoin Uhlig from (1) requiring PropLogix to use Uhlig's paper intake form, (2) blocking PropLogix from using Uhlig's web sites to submit orders for estoppel certificates and (3) instructing CICs for whom Uhlig acts as agent under Florida law to ignore or to not respond to estoppel certificate requests from PropLogix.  PropLogix's Second Amended Motion For Temporary Restraining Order And Preliminary Injunction And Permanent Injunction (Doc. #119) at 1–2.  In addition, PropLogix asks that the Court prohibit Uhlig from (1) violating the FDUTPA and Florida Statute Sections 718.116(8) and 720.30851, and (2) engaging in any intentional conduct that directly or indirectly interferes with PropLogix's ability to timely receive estoppel certificates.  Id.

## Analysis

The present dispute centers around two Florida statutory requirements which apply to CIC processing of requests for estoppel certificates.  First, Florida law requires that within ten days after a CIC receives a written or electronic request for an estoppel certificate from a property owner, lender or "designee" of the owner or lender, the CIC or its authorized agent must deliver the certificate.[3]  Second, a CIC "association or its authorized agent" can charge no more than

---

[3]  See Fla. Stat. § 718.116(8) ("Within 10 business days after receiving a written or
(continued . . .)

$250.00 (adjusted for inflation under the statute, now $299.00) for the preparation and delivery of an estoppel certificate.[4]

Florida statutes provide detailed requirements about the form and content of estoppel certificates. See Fla. Stat. § 718.116(8)(a), § 720.30851(1). Even so, the statutes do not address material issues: (1) whether the designee of an owner or lender may designate an agent or subagent to order an estoppel certificate on behalf of the designee, (2) whether a CIC or its authorized agent can refuse to process a request for an estoppel certificate if the agent or subagent of the designee does not disclose information about the fee that the agent or subagent is charging the designee and detailed contact information for the property owner or (3) whether an agent or subagent can charge an additional fee to the designee or agent of the designee for the service of obtaining and analyzing the estoppel certificate. The Florida statutes do not expressly regulate these aspects of real estate commerce in Florida and neither party cites statutory language or legislative history which suggests that the Florida legislature intended to do so.[5] As explained below, based largely on the limited reach of the Florida statutes, neither party can establish that (1) absent an injunction, it will

---

[3](. . .continued) electronic request therefor from a unit owner or the unit owner's designee, or a unit mortgagee or the unit mortgagee's designee, the association shall issue the estoppel certificate."); Fla. Stat. § 720.30851 ("Within 10 business days after receiving a written or electronic request for an estoppel certificate from a parcel owner or the parcel owner's designee, or a parcel mortgagee or the parcel mortgagee's designee, the [CIC] association shall issue the estoppel certificate").

[4] Fla. Stat. § 718.116(8)(f) ("Notwithstanding any limitation on transfer fees contained in s. 718.112(2)(k), an association or its authorized agent may charge a reasonable fee for the preparation and delivery of an estoppel certificate, which may not exceed $250. . . ."); Fla. Stat. § 720.30851(6) ("An association or its authorized agent may charge a reasonable fee for the preparation and delivery of an estoppel certificate, which may not exceed $250. . . .").

[5] Neither party asserts that a plain reading of the statutes reveals an ambiguity or would lead to "an unreasonable or ridiculous conclusion." In re McCollam, 612 So. 2d 572, 573 (Fla. 1993). Therefore the Court gives Florida statutes their "plain and ordinary meaning." Id.

suffer irreparable harm or (2) it is substantially likely to prevail on the merits of its claims.

**I.        Irreparable Harm**

Harm is "irreparable" if the movant can show a "significant risk that [it] will experience harm that cannot be compensated after the fact by money damages." Fish v. Kobach, 840 F.3d 710, 751 (10th Cir. 2016) (quoting RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1210 (10th Cir. 2009)).  Adequate legal remedies foreclose injunctive relief.  N. Cal. Power Agency v. Grace Geothermal Corp., 469 U.S. 1306, 1306 (1984).  Irreparable harm often can result because of "the difficulty in calculating damages, the loss of a unique product, and existence of intangible harms such as loss of goodwill or competitive market position."  Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1264 (10th Cir. 2004); see Bayer HealthCare LLC v. Nagrom, Inc., No. 03–2448–KHV, 2004 WL 2216491, at *6 (D. Kan. Sept. 7, 2004) (unfair competition by its very nature results in irreparable injury because the attendant loss of goodwill, reputation and business cannot adequately be quantified and the injured party cannot adequately be compensated).

           A.        Uhlig Has Not Established Irreparable Harm

Uhlig argues that absent an injunction which requires PropLogix to use Uhlig's paper form to order an estoppel certificate, PropLogix will irreparably harm "Uhlig's goodwill and customer relationships because Uhlig cannot ensure that the Community Information is timely resold, not manipulated, and not upsold in an amount exceeding the statutory cap." Memorandum In Support Of Plaintiff's Motion For Temporary Restraining Order And Preliminary Injunction (Doc. #94) at 13.  Uhlig states that it will honor requests from PropLogix if it completes the paper form.  Uhlig does not explain how requiring PropLogix to use Uhlig's paper form "ensures" that PropLogix will timely resell the Community Information, not manipulate it and not add a fee to the statutory

amount charged by Uhlig. Indeed, the evidence suggests that whether PropLogix obtains an estoppel certificate from Uhlig on line or through a paper request, PropLogix delivers the estoppel certificate in the exact same format to its client (adding a cover sheet and highlighting various parts of the certificate) and charges the same fee for this service. Uhlig has not presented evidence that PropLogix's method of delivering estoppel certificates to its clients has harmed Uhlig's goodwill and customer relationships with CICs. PropLogix has ordered estoppel certificates on behalf of its clients, which almost exclusively are title companies and real estate attorneys, who are designees of property owners or lenders. Uhlig receives the same fee whether the designee of an owner or lender requests the estoppel certificate directly from Uhlig or indirectly through a third party agent such as PropLogix. Uhlig has not shown that it incurs harm from the fact that PropLogix clients—all of whom appear to have legitimate interests in the various real estate transactions—have decided to pay fees to PropLogix (and indirectly to third parties that PropLogix may hire) for the service of requesting and analyzing estoppel certificates.

Uhlig suggests that it will suffer irreparable harm because if property owners or their designees pay PropLogix more than the maximum statutory fees under Florida law for estoppel certificates, Uhlig will risk potential lawsuits from property owners. On the present record, Uhlig's fears of potential liability are hypothetical and grossly exaggerated. Florida law limits how much an "association or its authorized agent" (e.g., a CIC or Uhlig) charges for the preparation and delivery of the certificate to the individual or entity requesting the certificate. Fla. Stat. §§ 718.116(8)(f), 720.30851(6). The statutes do not purport to restrict property owners, lenders or designees from contracting with others (i.e. their agents or subagents such as PropLogix) to

request, analyze and deliver estoppel certificates for them.[6] Uhlig therefore has not shown that it faces a material risk that property owners will sue it for additional fees that they paid PropLogix, or that said threat constitutes irreparable harm which the proposed injunction would prevent.

Uhlig suggests that it will suffer irreparable harm if PropLogix is able to request estoppel certificates on line because property owners may sue Uhlig for disclosure of unauthorized information. As explained above, Uhlig has presented no evidence that in some 30,000 past orders for estoppel certificates, PropLogix ever requested an estoppel certificate when it was not an authorized agent or subagent of a title company, real estate attorney or some other authorized designee of the owner or lender.

Uhlig also requests that the Court enjoin PropLogix from filing ancillary lawsuits against Uhlig and its clients that involve substantially the same relief sought in this litigation. Again, Uhlig has not presented evidence of irreparable harm on account of such litigation. Shortly after the hearing on the parties' requests for injunctive relief, PropLogix voluntarily dismissed the lawsuit which it had filed against two of Uhlig's clients in the Ninth Judicial Circuit in Orange County, Florida. See PropLogix, LLC v. Sawgrass Plantation Orlando Master Homeowners Ass'n, Inc. & Univ. Estates Prop. Owners Ass'n, Inc., No. 2023-CA-014253-O. Uhlig has not shown that

---

[6] At least some title companies, real estate attorneys and other authorized designees apparently have determined that hiring a third party such as PropLogix to conduct this service—which the statute does not explicitly regulate—is more efficient than doing it themselves. Uhlig argues that it does not seek to prohibit third parties such as PropLogix from conducting such services. Even so, Uhlig argues that the total fee that the third party (here, PropLogix) charges the owner, lender or designee cannot exceed the statutory maximum fee which usually is the amount that the third party paid Uhlig to obtain the certificate. In other words, in most transactions, Uhlig contends that the statute implicitly prohibits PropLogix from charging anything for its service. Even though Uhlig is an agent of various CICs, Florida law does not charge it with the responsibility of ensuring that title companies and real estate attorneys do not employ agents or subagents to conduct part of their due diligence services.

it will suffer irreparable harm from the possibility of future lawsuits.[7]

Uhlig requests that the Court enjoin PropLogix from creating and utilizing Uhlig customer lists to contact Uhlig customers. Uhlig asserts that PropLogix has "reverse engineered" the identity of Uhlig's CIC clients. Uhlig does not dispute that the web sites for its CIC clients direct users to obtain estoppel certificates from Uhlig as their authorized agent. Uhlig has not shown any harm on account of PropLogix retaining information about the CICs that Uhlig represents. Even if Uhlig could establish some harm, it has not shown that money damages would not adequately compensate it for any false representations that PropLogix might make in communications with Uhlig clients.

B.   PropLogix Has Not Established Irreparable Harm

PropLogix argues that absent an injunction which requires Uhlig to let it order estoppel certificates on line, PropLogix will suffer irreparable harm in the form of loss of customers, past and future revenue, business reputation and goodwill. Memorandum In Support Of PropLogix, LLC's Second Amended Motion For Temporary Restraining Order And Preliminary And Permanent Injunction (Doc. #120) filed September 1, 2023 at 8. Uhlig has agreed to fulfill requests from PropLogix if it uses the paper forms and Uhlig can confirm that PropLogix is authorized to order the estoppel certificates.[8] Transcript Of Motion Hearing (Doc. #153) filed October 11, 2023

---

[7]   The Court also notes that an injunction which bars future lawsuits could restrict the potential rights of PropLogix and its clients under Florida law, which expressly permits a summary proceeding to compel a CIC or its agent to comply with estoppel certificate requirements. See Fla. Stat. § 718.116(8)(e) (summary proceeding "may be brought to compel compliance with this subsection, and in any such action the prevailing party is entitled to recover reasonable attorney fees"); Fla. Stat. § 720.30851(5) (summary proceeding "may be brought to compel compliance with this section, and the prevailing party is entitled to recover reasonable attorney fees").

[8]   Uhlig may have legitimate concerns about PropLogix's compliance with the terms
(continued . . .)

at 190, 200; see also Memorandum In Support Of Plaintiff's Motion For Temporary Restraining Order And Preliminary Injunction (Doc. #94) at 15 ("PropLogix will still be free to submit the aforementioned form and establish that it has a legitimate use and need to access information from Uhlig."). PropLogix has not shown that money damages would be insufficient to quantify the loss in the few—if any—instances where Uhlig's confirmation process extends beyond ten days.

PropLogix asserts that it will lose customers because Uhlig insists on contacting property owners as part of the confirmation process. PropLogix asserts that its losses will be significant, but it has not shown that it cannot quantify them. See Defendant PropLogix, LLC's First Amended Answer To Plaintiff's Second Amended Complaint And Jury Demand, And Counterclaim (Doc. #76) filed June 14, 2023 at 22 (PropLogix alleges that from November of 2022 until June of 2023, it lost 11 customers and some $200,000 in revenue).

In sum, neither party has presented credible evidence that absent an injunction, it will suffer harm which cannot be remedied through money damages.

---

[8](. . .continued)
and conditions of using Uhlig's web sites. Even so, based on PropLogix's numerous past orders for estoppel certificates as an agent of an authorized designee, Uhlig does not explain the basis for its apparent concern that PropLogix may order estoppel certificates when it is not an authorized agent or subagent of a title company, real estate attorney or some other authorized designee. The Court cannot ascertain why Uhlig insists on imposing a potentially costly and time-consuming process (including contacting the property owner who likely will not know which party hired PropLogix) to confirm that for each paper request which PropLogix submits, it is authorized to order the estoppel certificate on behalf of a title company or real estate attorney whom the owner or lender has designated. At this preliminary stage, the Court need not set forth the exact parameters of what triggers Uhlig's obligation to fulfill a request, whether PropLogix must complete every entry on the paper form or what verification procedures Uhlig can employ. Based solely on the statutory language, however, it seems that if PropLogix informs Uhlig that it is acting as an agent of [name of title company or real estate attorney] who is a designee of [name of owner or lender], Uhlig can easily verify that information through the title company or real estate attorney.

**II.     Likelihood Of Success On Merits**

Neither party has established that it is substantially likely to ultimately prevail on the merits of its claims. Tri-State, 805 F.2d at 355.

Uhlig argues that it is likely to succeed on its three breach of contract claims because PropLogix is reusing or reselling information to other service providers in violation of the three online agreements which PropLogix executed on past orders. Memorandum In Support Of Plaintiff's Motion For Temporary Restraining Order And Preliminary Injunction (Doc. #94) at 17. PropLogix states that it does not sell the estoppel information, manipulate it or do anything other than provide estoppel certificates to its clients. Defendant/Counterclaim Plaintiff PropLogix, LLC's Memorandum Of Law And Suggestions In Opposition To Plaintiff/Counterclaim Defendant's Motion For Temporary Restraining Order And Preliminary Injunction (Doc. #113) filed August 9, 2023 at 14. PropLogix also argues that the contracts are not enforceable because they conflict with Florida statutes which (1) do not permit CICs or their agents to impose additional, non-statutory requirements to obtain estoppel certificates and (2) do not preclude agents of a statutory designee from charging fees to obtain and analyze estoppel certificates. At this stage, because Florida law does not expressly address these issues, the Court assumes that Uhlig's online agreements are enforceable. Even so, Uhlig has not established that it can prove any damages from PropLogix's breach of the online agreements, which is an essential element of a breach of contract claim. See Rauch, Weaver, Norfleet, Kurtz & Co. v. AJP Pine Island Warehouses, Inc., 313 So. 3d 625, 630 (Fla. Dist. Ct. App. 2021). For each estoppel request from PropLogix, Uhlig receives the statutory fee. As explained above, Uhlig has not shown that it incurs harm because title companies and real estate attorneys pay additional fees to PropLogix for doing the administrative legwork of obtaining estoppel certificates. Uhlig has not shown that it is

substantially likely to establish damages on its contract claims.[9]

PropLogix argues that it is likely to succeed on its counterclaims for tortious interference with business relationships, deceptive and unfair competition and declaratory relief. As noted above, the Florida statutes on estoppel certificates do not address what information a CIC or its agent may ask for to verify that a party requesting an estoppel certificate is an authorized "designee" of an owner or lender. PropLogix has not shown that Florida law affords it an unqualified right to ask for an estoppel certificate on line and without verification that it is a designee of the owner or lender. PropLogix therefore cannot show that it is substantially likely to prevail on its claims.

**III.   Conclusion**

Neither party has established that (1) absent an injunction, it will suffer irreparable harm or (2) it is substantially likely to prevail on the merits of its claims. The Court therefore overrules the parties' requests for injunctive relief.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion For Temporary Restraining Order And Preliminary Injunction (Doc. #93) filed July 19, 2023 is **OVERRULED**.

**IT IS FURTHER ORDERED** that PropLogix's Second Amended Motion For Temporary Restraining Order And Preliminary Injunction And Permanent Injunction (Doc. #119) filed September 1, 2023 is **OVERRULED**.

Dated this 6th day of December, 2023 at Kansas City, Kansas.

                                              s/ Kathryn H. Vratil
                                              KATHRYN H. VRATIL
                                              United States District Judge

---

[9] In any event, as explained above, to the extent that Uhlig could establish damages, it has not shown that money damages would not adequately compensate it for any losses.