## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UHLIG LLC d/b/a CONDOCERTS™ and
WELCOMELINK®,

               Plaintiff,

v.

PROPLOGIX, LLC,

               Defendant.

Case No. 22-2475-KHV-ADM

## MEMORANDUM & ORDER AND
## REPORT & RECOMMENDATION NUNC PRO TUNC

This matter comes before the court on plaintiff Uhlig, LLC's ("Uhlig") Motion for Leave to File Third Amended Complaint. (ECF 149.) By way of this motion, Uhlig seeks to amend its complaint to (1) modify its existing claims to add facts and additional grounds for relief, and (2) add a trade secret misappropriation claim. (*See* ECF 149, at 5; ECF 149-2.) Defendant PropLogix, LLC ("PropLogix") does not oppose Uhlig's motion to the extent that Uhlig seeks to amend its complaint to add facts and new grounds for relief relating to its previously pled claims, so the court grants that portion of Uhlig's motion as unopposed. (ECF 159.) However, PropLogix opposes Uhlig's motion to the extent Uhlig seeks to add a trade secret misappropriation claim. (*Id.*) For the reasons explained below, the court recommends that the district judge deny that portion of Uhlig's motion to amend as futile.[1]

---

[1] The court issues this portion of its decision by way of a report and recommendation because, to the extent the court denies a motion to amend solely on grounds of futility, the ruling is considered dispositive. *See Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999) ("The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim, a question this court reviews de novo."); *see, e.g., Gardiner v. McBryde*, No. 15-3151-DDC-JPO, 2018 WL 6991101, at *1 n.3 (D. Kan. Oct. 5, 2018) (recommending the assigned district judge deny motion to amend as futile), *report and recommendation adopted*, No. 15-3151-DDC-JPO, 2018 WL 6715827 (D. Kan. Dec. 21, 2018); *Jackson v. Kan. Cnty. Ass'n*

## BACKGROUND

The background and nature of this case, as well as the parties' claims, are more thoroughly described in the court's prior orders in this case, familiarity with which is presumed.  *See, e.g.*, *Uhlig, LLC d/b/a CondoCerts™ and WelcomeLink™ v. PropLogix, LLC*, No. 22-2475, 2023 WL 8452426, at *1 (D. Kan. Dec. 6, 2023) (denying both parties' motions for preliminary injunctions and temporary restraining orders).  Briefly summarized, this case involves information typically provided in connection with real estate transactions involving common interest communities ("CICs"), such as homeowner associations, condominiums, co-ops, and similar communities. Uhlig acts as a representative of its client CICs and/or their property managers to provide "Community Information" for CIC properties that are being resold or refinanced.  This Community Information includes what are commonly known as "estoppel certificates" that report CIC obligations associated with real property deeds.  Buyers, lenders, and title companies can order estoppel certificates for the CICs that Uhlig represents through Uhlig's online ordering sites CondoCerts™ and WelcomeLink™.  PropLogix is a real estate due diligence company whose customers are primarily title and real estate companies.  PropLogix has, for years, routinely ordered estoppel certificates from Uhlig websites—estimated to be "some 30,000 estoppel certificates from Uhlig at a cost of some eight million dollars."  *Id.* at *2.  In late 2022, Uhlig discovered how PropLogix was using those estoppel certificates, terminated PropLogix's access to Uhlig's online ordering sites, and filed this lawsuit.  PropLogix retaliated by sending threat letters to Uhlig's clients and asserting counterclaims for the way in which Uhlig is now requiring PropLogix to order estoppel certificates offline.  *See Uhlig, LLC d/b/a CondoCerts™ and WelcomeLink™ v.*

_____

*Multiline Pool*, No. 03-4181-JAR, 2005 WL 3307215, at *1 (D. Kan. Dec. 6, 2005) (reviewing futility-based denial of motion to amend under de novo standard); *McCormick v. City of Lawrence, Kan.*, No. 02-2135-JWL, 2003 WL 158704, at *1 (D. Kan. Jan. 17, 2003) (same).

*PropLogix, LLC*, No. 22-2475, 2023 WL 3948629, at *1 (D. Kan. June 12, 2023) (granting PropLogix leave to file an amended answer to add counterclaims).

Uhlig's Second Amended Complaint alleges that customers can order the subject "Community Information" from Uhlig's online ordering websites by: (1) reviewing and accepting the "Terms of Use" as a condition of entering the ordering site; (2) reviewing and accepting the "Account Registration Agreement" as a condition to getting access to the ordering functionality of the ordering site; and (3) reviewing and accepting the "Order Submission Agreement" as a condition to placing an order (collectively, the "Customer Agreements"). (ECF 25 ¶¶ 13, 19.) The Customer Agreements prohibit customers (like PropLogix) from reselling Community Information for commercial purposes. Uhlig alleges PropLogix violated these Customer Agreements by ordering Community Information from Uhlig's website and then reselling it for an upcharge—*i.e.*, "commercializing" it. (*Id.* ¶¶ 20-28.) After Uhlig terminated PropLogix's access to its online ordering sites and forced PropLogix to start submitting written requests for the Community Information, PropLogix retaliated by sending threat letters to Uhlig's clients, which are the CICs on behalf of whom Uhlig provides the Community Information. (*Id.* ¶¶ 31-33.) Based on these general facts, Uhlig asserts claims against PropLogix for breaching the Customer Agreements by commercializing the Community Information; for unjust enrichment given the benefit PropLogix receives by reselling the Community Information at a higher price; for fraud based on PropLogix accepting the terms of the online ordering sites each time it placed an order when PropLogix knew it intended to commercialize the Community Information; and for tortious interference with business relationships and for deceptive and unfair competition under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") based on the threat letters PropLogix sent to Uhlig's clients.

Discovery opened in March, and the court held a scheduling conference on April 6 and 21. (ECF 29, 41, 42.)  Uhlig sought written discovery early on, but PropLogix repeatedly and egregiously delayed in meeting its discovery obligations, as reflected in more detail throughout the record.  (*See, e.g.*, ECF 71, 92, 100, 103.)  PropLogix ultimately identified its former counsel as the root of the problem.  (ECF 122.)  On August 28, PropLogix's former counsel withdrew from the case and its new counsel entered their appearance as substitute counsel.  (ECF 118.)  Since then, it appears that PropLogix immediately began to act with diligence in providing discovery. PropLogix responded to Uhlig's discovery requests on September 1, and it made document productions on September 1, 15, and 29.  (ECF 121; ECF 122, at 2 & n.1; ECF 149, at 2.)  One of the documents in PropLogix's September 29 production forms the basis for the parties' dispute over whether Uhlig has a plausible trade secret claim.  It is a 331-page spreadsheet containing a list of the associations and property management companies Uhlig represents, which Uhlig refers to as its "client list" or "customer list."[2]  Uhlig claims its discovery that PropLogix had this spreadsheet spurred the current motion to amend.  (ECF 149, at 3.)

By way of this motion, Uhlig seeks to file a Third Amended Complaint to add factual allegations that relate to its existing claims.  Uhlig seeks to expand the existing breach-of-contract claims to add factual allegations that PropLogix also violated the Customer Agreements by reusing, copying, storing, modifying, aggregating, compiling, and creating derivatives of the Community Information.  (ECF 149-2 ¶¶ 21, 24, 45, 48, 57, 60.)  Uhlig also seeks to expand its unjust enrichment claim for similar reasons—namely, the benefit PropLogix allegedly received by aggregating, compiling, and storing Uhlig's customer lists and associated data.  (*Id.* ¶¶ 43, 63, 68, 69.)  In addition, Uhlig seeks to expand the fraud claim to allege that, after Uhlig terminated

---

[2] Uhlig's motion refers to "client list" and "customer list" interchangeably.

PropLogix's access to the online ordering sites, PropLogix enlisted other companies, including Stellar Innovations Solutions Corp. ("Stellar") and Privo Corporation ("Privo") to covertly access the online ordering sites on PropLogix's behalf.  (*Id.* ¶¶ 33-39, 77-83.)  Lastly, Uhlig seeks to add a claim for misappropriation of trade secrets based on its allegation that PropLogix incorporated the Community Information into databases, from which it impermissibly compiled information so as to "recreate[] Uhlig's customer list and other trade secret compilations."  (*Id.* ¶¶ 125-126.)

## LEGAL STANDARD

When a party moves to amend after the scheduling order deadline, the moving party must (1) demonstrate good cause under Federal Rule of Civil Procedure 16(b)(4), and (2) satisfy the standards for amendment under Rule 15(a).  *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).  The moving party must show good cause for failing to move to amend prior to the cutoff date and for the length of time between learning of the new information warranting amendment and moving to amend.  *See Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1248 (10th Cir. 2015).  Whether to grant a motion to amend is within the court's sound discretion.  *Gorsuch*, 771 F.3d at 1240.

## ANALYSIS

**A.    Uhlig Has Demonstrated Good Cause Under Rule 16(b)(4).**

In this case, the scheduling-order deadline for motions to amend was April 17 (ECF 42, at 2), and Uhlig did not file the current motion to amend until October 10, 2023.  A scheduling order "may be modified only for good cause and with the judge's consent."  FED. R. CIV. P. 16(b)(4). To establish good cause, the moving party must show that it could not have met the motion to amend deadline despite "diligent efforts."  *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018).  Because Rule 16 requires diligence, if a party knows of "the underlying

conduct but simply failed to raise [its] claims, . . . the claims are barred." *Gorsuch*, 771 F.3d at 1240. On the other hand, the "good cause requirement may be satisfied . . . if a [party] learns new information through discovery or if the underlying law has changed." *Id.*

Uhlig contends that its proposed amendment was timely considering PropLogix's belated document productions, including the belated production of the customer list that is at the center of Uhlig's motion to amend. PropLogix produced this customer list on September 29. A PropLogix representative then testified about the spreadsheet at a hearing on the parties' motions for injunctive relief on October 3. Uhlig filed the current motion to amend just one week later, on October 10. Uhlig was clearly diligent in filing the current motion to amend. The court therefore finds that Uhlig has demonstrated good cause under Rule 16 for filing its motion to amend beyond the April 17 deadline—even well beyond the April 17 deadline given PropLogix's significant delays in meeting its discovery obligations.

## B.      Amendment Under Rule 15(a)(2).

The court next considers whether the standards for amendment under Rule 15(a) are met. Rule 15(a)(2) directs the court to "freely give leave [to amend] when justice so requires." In freely allowing leave to amend, the court provides litigants with "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). A court may only withhold leave to amend for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment." *U.S. ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009) (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Practically speaking, the party opposing a

motion to amend bears the burden to demonstrate why the amendment should not be permitted. *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010) (holding that in the absence of such a showing, amendment should be allowed).

      **1.**      **Uhlig's Motion Is Granted to the Extent it Is Unopposed**

PropLogix does not lodge any objection to the court allowing the aspects of Uhlig's proposed amended pleading that seek to add factual allegations and state additional grounds for relief in support of Uhlig's existing claims. Accordingly, the court grants Uhlig's motion to the extent the proposed Third Amendment Complaint adds the factual allegations and grounds for relief discussed above relating to its previously pled claims.

      **2.**      **The Court Recommends the District Judge Deny the Motion as Futile to the Extent Uhlig Seeks to Add a Trade Secret Misappropriation Claim**

In opposing Uhlig's motion to amend, PropLogix principally contends that Uhlig's proposed trade secret claim fails to state a claim and therefore amending the complaint would be futile. (ECF 159, at 3-8.) A court may deny a motion to amend as futile "if the proposed amendment could not have withstood a motion to dismiss or otherwise fail[s] to state a claim." *Schepp v. Fremont Cty., Wyo.*, 900 F.2d 1448, 1451 (10th Cir. 1990). When analyzing a motion to dismiss, a court must "assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

      **a.**      **Uhlig's Proposed Pleading Does Not Plausibly Allege that PropLogix Misappropriated a Trade Secret**

PropLogix contends that Uhlig's proposed Third Amended Complaint does not identify any trade secret that PropLogix allegedly misappropriated. PropLogix says it "simply purchased publicly available information that Uhlig agreed to provide" and points out that Uhlig "does not assert that PropLogix stole Uhlig's database of information." (ECF 159, at 1-2.) Rather, Uhlig

essentially alleges that PropLogix "reverse engineered" Uhlig's database by taking information from the estoppel certificates, storing it in a database, and then using some portion of that information to "recreate[] Uhlig's customer list and other trade secret compilations." (ECF 142-2 ¶ 125.)  PropLogix further emphasizes that Uhlig does not allege that PropLogix stole a pre-existing customer list or hacked into Uhlig's information database.  Rather, Uhlig "contracts with homeowners' associations, condominium associations, and management companies to provide estoppel certificates" to fulfill those associations' statutory obligation to provide required information to real estate buyers, sellers, and their designees (like PropLogix) for a fee that is set by statute.  (ECF 159, at 3-4.)  Thus, PropLogix contends that "Uhlig cannot claim a trade secret over estoppel certificates and the information contained therein."  (ECF 159, at 1.)

Uhlig's arguments are inconsistent about what exactly it contends forms the trade secret that PropLogix allegedly misappropriated.  On the one hand, Uhlig's proposed Third Amended Complaint alleges in conclusory fashion that PropLogix "misappropriated **compilations** of Community Information obtained from Uhlig" and that the "**compilation** of Community Information, both in whole and in part, constitutes a trade secret under Kansas, Florida, and Delaware law." (ECF 149-2 ¶¶ 127, 131 (emphasis added).)  Presumably in support of this theory, Uhlig relies on case law to the effect that client lists can be considered trade secrets.  (ECF 164, at 1-2.)  But then Uhlig more specifically clarifies that it "seeks to add a misappropriation of trade secrets claim based upon PropLogix's recreation of Uhlig's client list from the data it purchased from Uhlig." (*Id*.)  Indeed, Uhlig's Third Amended Complaint alleges that PropLogix allegedly "incorporated Community Information received from Uhlig" into a database and then "recreated Uhlig's customer list and other trade secret compilations."  (*Id*.)  So the only thing Uhlig alleges PropLogix actually took from Uhlig are the many estoppel certificates PropLogix purchased from

Uhlig over the course of several years.  Nowhere does Uhlig plausibly allege that PropLogix took an as-compiled customer list from Uhlig.  Accordingly, the court will proceed to consider whether the Community Information that PropLogix obtained from Uhlig constitutes a trade secret.

The definition of a "trade secret" is essentially the same under the Kansas Uniform Trade Secret Act ("KUTSA"), Florida Uniform Trade Secret Act ("FUTSA"), and Delaware Uniform Trade Secret Act ("DUTSA").  A trade secret is information that (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. KUTSA § 60-3320(4); FUTSA § 688.002(4); DUTSA § 2001(4).

Here, Uhlig's proposed factual allegations contain nothing from which it could be inferred that Uhlig took efforts that were reasonable under the circumstances to maintain the secrecy of the Community Information.  In fact, Uhlig's proposed amended pleading reflects the opposite.  Uhlig alleges that, as the CICs' authorized representative, it provides Community Information for a fee to "retail customers" who require such information for legitimate purposes such as CIC real estate transactions.  (ECF 149-2 ¶¶ 9-14.)  PropLogix is a Uhlig customer that has placed over 25,000 orders through Uhlig's online sites.  (*Id.* ¶¶ 25, 29.)  After Uhlig discovered PropLogix was commercializing the Community Information by reselling it and retaliated by terminating PropLogix's access to Uhlig's online ordering sites, PropLogix hired Stellar and Privo as "dummy buyers" to covertly access the online ordering sites for PropLogix.  (*Id.* ¶¶ 33-37.)  PropLogix also sent letters to Uhlig's clients (the CICs) in which PropLogix claimed that Uhlig was violating Fla. Stat. §§ 718.116 and 720.30851 by not fulfilling PropLogix's orders for Community Information. (*Id.* ¶¶ 110-112.)  Under these statutes, Uhlig (as the CICs' representative) is required by Florida

law to furnish such estoppel certificates within ten business days of receiving written or electronic requests from specified entities such as parcel/unit owners, mortgagees, or their designees. *See* Fla. Stat. §§ 720.30851, 718.116(8).  Viewing these factual allegations in the light most favorable to Uhlig, the only inference that can be drawn is that Uhlig does not take any measures to protect the secrecy of the Community Information.

In that respect, this case is similar to the trade secrets claim in *Montgomery County Association of Realtors, Inc. v. Realty Photo Master Corp.*, 878 F. Supp. 804 (D. Md. 1995).  There, the Montgomery County Realtors Association ("MCAR") compiled a computerized directory of real estate for sale in the area, known as a "Multiple Listing Service" ("MLS"), that MCAR's members could access with an access code.  *Id.* at 808.  Each day, the defendant Realty Photo Master Corp. ("RPM") would use an MCAR member's code to access the MLS system and identify the new listings, then go out and photograph those properties and feed the pictures onto its own system.  *Id.* at 808-09.  RPM provided its customers with software that combined the information from MCAR's MLS database with RPM's photographs.  *Id.* at 809.  The court granted summary judgment on MCAR's trade secrets claim because "the information in the MLS database is not a secret; to the contrary it is distributed widely to its realtor members and potential purchasers."  *Id.* at 814.

Similarly, Uhlig widely disseminates the Community Information by furnishing it to retail customers via Uhlig's online ordering sites.  "If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished."  *Ruckelhaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984); *see also* 4 RESTATEMENT (FIRST) OF TORTS § 757, cmt. b (1939) ("Matters which are completely disclosed by the goods which one markets cannot be his secret.").  Uhlig therefore

does not plausibly allege that it took reasonable measures to maintain the secrecy of the Community Information so that it constitutes a trade secret.

> ### b. Uhlig's Customer Agreements Contain No Non-Disclosure or Confidentiality Provisions

Uhlig nevertheless contends that the fact that it sold estoppel certificates to PropLogix is "not relevant" to its proposed trade-secret claim because it sold those estoppel certificates subject to the restrictions contained in its Customer Agreements. (ECF 164, at 2.) Specifically, Uhlig alleges that it sells estoppel certificates to PropLogix (and presumably anyone else) "for the sole purpose of facilitating the real estate transaction for which they were sold and . . . subject to Customer Agreements which prohibited PropLogix from copying, aggregating, compiling, or integrating, or otherwise exploiting the Community Information, or any parts thereof." (ECF 164, at 2.) Uhlig pleads that it protects its compilation of Community Information by requiring its customers who purchase estoppel certificates to "expressly accept" the Customer Agreements "as a condition of doing business with Uhlig" and that these Customer Agreements "prohibit contracting parties from maintaining, reselling, aggregating, and otherwise making use of the Community Information for commercial purposes." (ECF 149-2 ¶¶ 13, 129.) In other words, Uhlig essentially contends that the terms of the Customer Agreements are sufficient to raise a fact issue as to whether the Community Information constitutes a trade secret.

But the terms of the Customer Agreements are insufficient as a matter of law to constitute reasonable efforts to maintain the secrecy of the Community Information because Uhlig does not allege that those Customer Agreements contain any non-disclosure or confidentiality obligations. For example, the court dismissed the plaintiff's trade secret claim in *UAB "Planner 5D" v. Facebook, Inc.* where the plaintiff ("Planner 5D") did not allege "that any portion of Planner 5D's website was confidential or that the website requires its users to treat it as confidential." No. 19-

cv-3132-WHO, 2019 WL 6219223, at *10 (N.D. Cal. Nov. 21, 2019). Planner 5D argued, much like Uhlig does here, that the Terms of Service prohibited downloading and using the project exactly as one of the defendants did. The court rejected this argument, explaining that "[w]hile allegations about terms of service might be evidence of secrecy if parties are bound to that contract, here Planner 5D has not alleged that any portion of Planner 5D's website was confidential or that the website requires users to treat it as confidential." *Id.* Similarly, in *Arkeyo, LLC v. Cummins Allison Corp.*, the court held the plaintiff's software was not a trade secret because the plaintiff "committed the cyber equivalent of leaving its software on the park bench" by publicly disclosing it on the Internet for more than fifteen months. 342 F. Supp. 2d 622, 630-32 (E.D. Pa. 2017). The court noted that "posting … material on the internet without any confidentiality protections makes the information publicly available and renders the materials incapable of trade secret status." *Id.* And in *Broker Genius, Inc. v. Zalta*, the court found the plaintiff's software architecture, UX/UI, and scalability solutions lost any trade secret status when the plaintiff granted unfettered access to this information to its customers without imposing any confidentiality requirements orally or in writing; the Terms of Service in the clickwrap agreement "simply does not contain a confidentiality provision." 280 F. Supp. 3d 495, 521-22 (S.D.N.Y. 2017).

Contrast these cases with *Assessment Technologies Institute, LLC v. Parkes*, where the plaintiff ATI claimed its proctored and practice exams constituted trade secrets. 588 F. Supp. 3d 1178 (D. Kan. 2022). The court found the proctored exams were trade secrets because ATI maintained tight security controls over how those materials were stored and administered the exams in a controlled testing environment. *Id.* at 1212-13 (explaining the protocols). But more to the point here, the court then turned to the trade secret status of the practice exams, which, unlike the proctored exams, were not administered in a controlled environment with a proctor. *Id.* at

1214.  Rather, they were available online and it appeared to the court that users could take the practice exams "an unlimited number of times."  *Id.*  Nevertheless, the court pointed out that "the practice exams can only be accessed by account holders who first agree to ATI's Terms and Conditions, which include nondisclosure and confidentiality provisions."  *Id.* at 1212, 1215.  This was sufficient to create a genuine issue of material fact as to whether the plaintiff took reasonable efforts to maintain the secrecy of the practice exams.  *Id.* at 1215.

Uhlig's Customer Agreements are like those in *UAB "Planner 5D," Arkeyo*, and *Broker Genius* and not the Terms and Conditions for the practice exams at issue in *Assessment Technologies Institute, LLC*.  Uhlig's Customer Agreements allegedly place restrictions on how retail customers are allowed to use the Community Information obtained from Uhlig's online ordering sites by prohibiting those customers from copying, aggregating, compiling it, and the like.  Although these terms might support Uhlig's breach-of-contract, fraud, and other claims, the proposed Third Amended Complaint simply contains no allegation that Uhlig's customer agreements contain even the bare minimum non-disclosure and confidentiality provisions.  As such, Uhlig has not alleged that it took reasonable steps to maintain the secrecy so as to even plausibly give the Community Information trade-secret status.

In sum, because Uhlig's Community Information is not a trade secret (as it is readily ascertainable via Uhlig's online platforms and websites) and because Uhlig did not take reasonable measures to protect the secrecy of the information, Uhlig has not plausibly pleaded that the Community Information that PropLogix obtained from Uhlig constitutes a trade secret.  Accordingly, the court finds that PropLogix, as the party opposing the motion to amend, has met its burden to demonstrate that Uhlig should not be permitted to amend its complaint to add a trade secret misappropriation claim.  The court therefore recommends that the presiding district judge

deny Uhlig's motion to amend to allege a trade secret misappropriation claim because the proposed amendment would be futile.[3]

*   *   *   *   *

Pursuant to 28 U.S.C. § 636(b)(1), FED. R. CIV. P. 72(b)(2), and D. KAN. RULE 72.1.4(b), Uhlig may file written objections to this report and recommendation within fourteen days after being served with a copy. If Uhlig fails to file objections within the fourteen-day time period, no appellate review of the factual and legal determinations in this report and recommendation will be allowed by any court. *See In re Key Energy Res. Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000).

**IT IS THEREFORE RECOMMENDED** that plaintiff Uhlig, LLC's Motion for Leave to File Third Amended Complaint to Add New Claim and Facts Based On Newly Discovered Evidence (ECF 149) is denied in part to the extent that Uhlig seeks to allege a trade secret misappropriation claim.

**IT IS FURTHER ORDERED** that plaintiff Uhlig, LLC's Motion for Leave to File Third Amended Complaint to Add New Claim and Facts Based On Newly Discovered Evidence (ECF 149) is granted in part to the extent Uhlig seeks leave to amend its complaint to add facts and

---

[3] In view of the court's recommendation on this issue, Plaintiff's Motion to Supplement Its Motion for Leave to File Third Amended Complaint (ECF 195 (redacted version) & 196 (unredacted version)) is denied as moot. That motion is directed to supplementing the record on issues that are not germane to the sole issue upon which the court's determination rests—namely, that Uhlig has not alleged any reasonable measures that **Uhlig** (not PropLogix) undertakes to maintain the secrecy of the Community Information that Uhlig disseminates.

The court also denies Plaintiff's Motion to Seal Plaintiff's Motion to Supplement its Motion for Leave to File Third Amended Complaint. (ECF 197.) In this motion, Uhlig states only that the motion contains information that PropLogix has designated as confidential pursuant to the protective order in this case. This explanation does not meet the standards for under-seal filings set forth in D. Kan. Rule 5.4.2(c). Moreover, D. Kan. Rule 5.4.2 places the onus on PropLogix (as the "Proponent" who designated the material as confidential) to timely file a motion to seal or redact, and PropLogix did not do so within the 7-day deadline set forth in D. Kan. Rule 5.4.2(c).

grounds for relief related to its previously-pled claims.  Uhlig is directed to file its revised third amended complaint—without the trade secret misappropriation claim— within two business days.

      **IT IS FURTHER ORDERED** that Plaintiff's Motion to Supplement Its Motion for Leave to File Third Amended Complaint (ECF 195 (redacted version) & 196 (unredacted version)) is denied as moot.

      **IT IS FURTHER ORDERED** that Plaintiff's Motion to Seal Plaintiff's Motion to Supplement Its Motion for Leave to File Third Amended Complaint (ECF 197) is denied.  The clerk is therefore directed to unseal the Provisionally Sealed Motion filed at ECF 196.

      **IT IS SO ORDERED.**

Dated December 20, 2023, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
