IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UHLIG, LLC d/b/a CONDOCERTS™ and WELCOMELINK®, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION |
| v. | ) ) | No. 22-2475-KHV |
| PROPLOGIX, LLC, | ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM AND ORDER**

Uhlig LLC d/b/a CondoCerts™ and d/b/a WelcomeLink® brings suit against PropLogix, LLC. Uhlig seeks leave to amend its complaint to add a claim that PropLogix misappropriated trade secrets. Plaintiff's Motion For Leave To File Third Amended Complaint To Add New Claim And Facts Based On Newly Discovered Evidence (Doc. #149) filed October 10, 2023. On December 20, 2023, Magistrate Judge Angel D. Mitchell recommended that the Court deny Uhlig's motion as futile. Memorandum & Order And Report & Recommendation Nunc Pro Tunc (Doc. #210). On de novo review, for substantially the reasons stated in Judge Mitchell's Memorandum & Order And Report & Recommendation Nunc Pro Tunc (Doc. #210) and in PropLogix's Suggestions In Opposition To Uhlig's Objections To Magistrate Judge Mitchell's December 19, 2023 Order (Doc. #226) filed January 16, 2024, and as further explained below, the Court adopts Judge Mitchell's recommendation and overrules plaintiff's motion to amend.[1]

---

[1] PropLogix seeks to strike Uhlig's reply brief in support of its objections to the magistrate's recommendation. PropLogix's Motion To Strike Uhlig's Unauthorized Reply In Support Of Its Objections To Magistrate Report (Doc. #246) filed February 6, 2024. Even if the Court considers Uhlig's reply, however, it declines to grant Uhlig leave to amend. The Court therefore overrules PropLogix's motion to strike as moot.

**Legal Standards**

The magistrate judge issued a report and recommendation on plaintiff's motion for leave to amend, which arguably involves a dispositive ruling. The Court therefore reviews de novo whether to grant leave to amend. Cf. Birch v. Polaris Indus., Inc., 812 F.3d 1238, 1246 (10th Cir. 2015) (declining to decide whether magistrate judge order denying motion to amend should be reviewed de novo or under clearly erroneous or contrary to law standard).

After the scheduling order deadline has expired, a party seeking leave to amend must demonstrate (1) good cause to modify the scheduling order under Rule 16(b)(4), Fed. R. Civ. P., and (2) that amendment is proper under Rule 15(a), Fed. R. Civ. P. Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n, 771 F.3d 1230, 1240 (10th Cir. 2014).

To show "good cause" to modify the scheduling order under Rule 16, the proponent of an untimely amendment must show it could not have met the deadline even if it had acted with due diligence. Denmon v. Runyon, 151 F.R.D. 404, 407 (D. Kan. 1993). Lack of prejudice to the nonmovant does not demonstrate good cause. Monge v. St. Francis Health Ctr., Inc., No. 12-2269-EFM, 2013 WL 328957, at *2 (D. Kan. Jan. 10, 2013).

If a party establishes good cause under Rule 16, it must next establish that the proposed amendment is proper under Rule 15. Under that rule, the Court must freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Whether to grant leave to amend is a matter of discretion for the trial court. See Woolsey v. Marion Labs., Inc., 934 F.2d 1452, 1462 (10th Cir. 1991). The Court should normally refuse to grant leave to amend only upon a showing of futility, undue delay, undue prejudice to the non-moving party or bad faith of the moving party. See Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993). A district court may deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss or

otherwise fails to state a claim.  See Ketchum v. Cruz, 961 F.2d 916, 920 (10th Cir. 1992).

To determine whether the complaint states a claim under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face.  Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense.  Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions.  See id.; United States v. Herring, 935 F.3d 1102, 1110 (10th Cir. 2019).  Plaintiff bears the burden of framing its claims with enough factual matter to suggest that it is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements.  See Twombly, 550 U.S. at 556.  Plaintiff makes a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendant is liable for the alleged misconduct.  Iqbal, 556 U.S. at 678.  Plaintiff must show more than a sheer possibility that defendant has acted unlawfully—it is not enough to plead facts that are "merely consistent" with defendant's liability.  Id. (quoting Twombly, 550 U.S. at 557).  A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand.  Id.  Similarly, where the well-pleaded facts do not permit the Court to infer more than mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief.  Id. at 679.

## Factual And Procedural Background

In a common interest residential community ("CIC") such as a homeowner association,

condominium or co-op, real property deeds may be encumbered by obligations to the CIC. When a property owner sells or refinances a property, the owner, buyer, lender, title company or real estate attorney must often obtain an "estoppel certificate," which indicates any outstanding monetary obligation to the CIC. In Florida, within ten days of a request from an owner, mortgagee (i.e. lender) or designee of the owner or lender, the CIC or its authorized agent must provide an estoppel certificate. See Fla. Stat. §§ 718.116(8), 720.30851.

Uhlig clients include various CICs in Florida. On request, Uhlig provides estoppel certificates for client properties to property buyers, lenders, title companies and real estate due diligence service companies.

PropLogix is a real estate due diligence service company. Its customers are primarily title companies and real estate attorneys. Since at least 2016, PropLogix has used online platforms, including Uhlig web sites, to obtain estoppel certificates for its customers. When PropLogix obtains an estoppel certificate for a customer, it fronts the fee which Uhlig or another supplier charges. PropLogix passes on that charge to its customer and also charges for its services in researching the CIC and property management company, obtaining the estoppel certificate, preparing a cover page which provides a summary of the estoppel certificate and delivering the cover page and estoppel certificate to the customer.

Beginning November 22, 2022, Uhlig blocked PropLogix from ordering estoppel certificates from it on line. As a result, to obtain an estoppel certificate from Uhlig, PropLogix— but no other customer of Uhlig—must complete a paper intake form which requires disclosure of its fee and detailed contact information for the property owner including the best time to contact the owner and numbers for the owner's office phone, home phone and mobile phone.

After Uhlig started requiring PropLogix to use the paper intake form, PropLogix began to

request estoppel certificates directly from Uhlig clients. Uhlig instructed its clients not to respond to such requests, so PropLogix could only obtain estoppel certificates directly through Uhlig.

On November 21, 2022, Uhlig filed suit against PropLogix, alleging breach of contract, unjust enrichment, fraud, tortious interference with business relationships and deceptive and unfair competition in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq. PropLogix brings counterclaims for tortious interference with business relationships, violations of the FDUTPA and declaratory judgment.

Uhlig seeks leave to amend to add a claim for misappropriation of trade secrets under Kansas, Florida and Delaware law.[2] [Proposed] Third Amended Complaint And Jury Demand (Doc. #149-1), Count 8. Uhlig's proposed trade secrets claim alleges as follows:

PropLogix received Community Information from Uhlig and incorporated it into one or more databases.[3] Id., ¶ 125. In doing so, PropLogix impermissibly compiled Community Information and re-created Uhlig's customer list and other trade secret compilations. Id. The compilations that Uhlig maintains have independent economic value because they are not generally known or readily ascertainable by proper means "(e.g., without obtaining the same from Uhlig in violation of Uhlig's Customer Agreements)" by those who can make economic use of the same. Id., ¶ 126. PropLogix misappropriated, stored and used the compilations in its own business operations to obtain economic gain as a competitor of Uhlig. Id., ¶¶ 127–28. Uhlig's Customer

---

[2]   Judge Mitchell granted Uhlig's motion as unopposed to the extent it sought leave to add facts and new grounds for relief relating to its previously pled claims. Memorandum & Order And Report & Recommendation Nunc Pro Tunc (Doc. #210) at 1.

[3]   Uhlig defines Community Information to include (1) resale information which may include detailed financial and legal information about one or more residential units or owner accounts and (2) underwriting information which may include information on pending litigation, obligations and financial balances of the CIC as of a specific date. Id., ¶¶ 10–11.

Agreements prohibit contracting parties from maintaining, reselling, aggregating and otherwise making use of the Community Information for commercial purposes. Id., ¶¶ 129, 133. PropLogix agreed to those terms. By "compiling, retaining and storing compilations of Community Information obtained from Uhlig in its databases, and utilizing that information to develop and sell products and services in breach of the Customer Agreements," PropLogix has misappropriated Uhlig's trade secrets. Id., ¶ 134.

## Analysis

A trade secret is information that "(i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Kan. Stat. Ann. § 60-3320(4); Fla. Stat. § 688.002(4); 6 Del. Code § 2001(4).

As best that the Court can ascertain, Uhlig alleges that two categories of information are trade secrets: (1) the identity of its clients and (2) Community Information. [Proposed] Third Amended Complaint And Jury Demand (Doc. #149-1), ¶¶ 126–31, 134. As to client lists, Uhlig has not alleged that the identity of its customers is generally unknown or not readily ascertainable by proper means, or that it seeks to keep confidential the identity of the associations it represents. Uhlig therefore cannot state a claim for misappropriation of trade secrets based on the lists of Uhlig clients that PropLogix has compiled.[4]  Memorandum & Order And Report & Recommendation

---

[4] Uhlig alleges that under Florida law, it acted as the "authorized representative" of each of its clients to receive and complete estoppel requests. [Proposed] Third Amended Complaint And Jury Demand (Doc. #149-1), ¶¶ 8, 9, 95, 112. Indeed, Uhlig clients must publicly designate Uhlig as the authorized representative to receive requests for estoppel certificates. See Fla. Stat. § 720.30851 ("Each association shall designate on its website a person or entity with a
(continued. . .)

Nunc Pro Tunc (Doc. #210) at 9 (Uhlig failed to state claim because it did not allege that PropLogix took a customer list that Uhlig had compiled). As to Community Information, Uhlig has failed to allege facts which establish that (1) Community Information belongs to Uhlig and is not readily ascertainable by proper means (i.e. purchase of an estoppel certificate) or (2) Uhlig took reasonable measures to protect the secrecy of such information.[5]  Memorandum & Order And Report & Recommendation Nunc Pro Tunc (Doc. #210) at 13; see Restatement (First) of Torts § 757 (matters which are completely disclosed by goods which one markets cannot be secret).

In addition to the reasons stated above and in Judge Mitchell's recommendation, the Court denies leave to amend because Uhlig failed to establish good cause to amend the scheduling order. Under the scheduling order, Uhlig had to file a motion to amend by April 17, 2023. See Scheduling Order (Doc. #42) filed April 21, 2023, at 2. Uhlig filed its motion on October 10, 2023. As explained above, to show "good cause" to modify the scheduling order under Rule 16, the

---

[4](. . .continued)
street or e-mail address for receipt of a request for an estoppel certificate issued pursuant to this section."); see also Memorandum And Order (Doc. #200) filed December 6, 2023 at 11 ("Uhlig does not dispute that the web sites for its CIC clients direct users to obtain estoppel certificates from Uhlig as their authorized agent.").

[5]      Uhlig alleges that the only proper means for PropLogix to obtain Community Information of its clients is to obtain it without violating Uhlig's customer agreements. [Proposed] Third Amended Complaint And Jury Demand (Doc. #149-1), ¶ 126 ("The compilations of Community Information that Uhlig maintains has independent economic value because it is not generally known or readily ascertainable by proper means (e.g., without obtaining the same from Uhlig in violation of Uhlig's Customer Agreements) by those who can make economic use of the same."). Uhlig alleges that customers can obtain Community Information, however, if they accept Uhlig's customer agreements. See id., ¶ 12 (use of Resale Information and Underwriting Information is "expressly conditioned upon acceptance of Uhlig's Customer Agreements"). In other words, the Community Information is readily ascertainable through proper means if a customer pays a fee and accepts the customer agreements. The fact that the consumer may have contractual obligations not to reuse the information does not transform the information which is available to the consumer into a trade secret.

proponent of an untimely amendment must show it could not have met the deadline even if it had acted with due diligence.  Denmon, 151 F.R.D. at 407; see Gorsuch, 771 F.3d at 1240 (standard requires movant to show despite diligent efforts, it could not meet scheduling deadlines).  Uhlig's complaint—filed some nine months before its motion to amend—alleged that PropLogix had retained Community Information and subsequently reused or exploited that stored information for commercial advantage.  See, e.g., Second Amended Complaint And Jury Demand (Doc. #25) filed January 30, 2023, ¶ 25 (PropLogix "further retains the Community Information obtained from Uhlig for the purpose of expanding PropLogix's database of Community Information that it can subsequently resell or otherwise exploit for commercial purposes"); id., ¶ 26 (PropLogix was "reselling and/or reusing Uhlig's Community Information for PropLogix's commercial purposes"); id., ¶ 38 (PropLogix was "reselling and/or reusing Community Information for commercial purposes").  Uhlig has not shown that it acted diligently (or otherwise adequately explained why it delayed some nine months) in asserting a trade secret claim based on PropLogix's resale or reuse of stored Community Information.[6]  Because Uhlig has not shown good cause to amend the scheduling order deadline, the Court overrules Uhlig's motion to amend for this additional reason.

**IT IS THEREFORE ORDERED** that the Memorandum & Order And Report & Recommendation Nunc Pro Tunc (Doc. #210) filed December 20, 2023 is **ADOPTED**.

---

[6] Judge Mitchell determined that Uhlig had shown good cause under Rule 16 because PropLogix belatedly produced Uhlig's customer list.  Memorandum & Order And Report & Recommendation Nunc Pro Tunc (Doc. #210) at 6.  The belated disclosure of the customer list may have provided Uhlig good cause to delay its assertion of a trade secret claim based solely on the identity of Uhlig's clients.  Even so, Uhlig has not explained why it did not assert a trade secret claim earlier based on PropLogix's alleged retention, reselling and reusing of community information, as asserted in the Second Amended Complaint And Jury Demand (Doc. #25).

**IT IS FURTHER ORDERED** that Plaintiff's Motion For Leave To File Third Amended Complaint To Add New Claim And Facts Based On Newly Discovered Evidence (Doc. #149) filed October 10, 2023 is **OVERRULED**.

**IT IS FURTHER ORDERED** that PropLogix's Motion To Strike Uhlig's Unauthorized Reply In Support Of Its Objections To Magistrate Report (Doc. #246) filed February 6, 2024 is **OVERRULED**.

Dated this 5th day of March, 2024 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge