### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

UHLIG LLC d/b/a CONDOCERTS™ and
d/b/a WELCOMELINK®,

             Plaintiff,

v.

PROPLOGIX, LLC,

             Defendant.

Case No. 22-2475-KHV-ADM

### NUNC PRO TUNC MEMORANDUM AND ORDER

The nature of this case is described in the court's prior orders, familiarity with which is presumed.  Briefly summarized, plaintiff Uhlig LLC ("Uhlig") filed this lawsuit against defendant PropLogix, LLC ("PropLogix"), one of Uhlig's own customers that purchased more than $8 million in so-called "estoppel certificates" from Uhlig over the past several years.  Uhlig contends that PropLogix used the estoppel certificates in ways that violated the terms and conditions of Uhlig's online ordering sites known as CondoCerts™ and Welcome Link®, so Uhlig terminated PropLogix's access to those sites.  PropLogix is in the business of obtaining estoppel certificates as part of the real estate due diligence services it provides to its clients, such as real estate agents and closing companies.  PropLogix says the way it uses those estoppel certificates is standard in the industry; that Uhlig is selectively targeting PropLogix because it is unique in that it runs a competing website (Estoppels.com); and that, once PropLogix pays the prescribed statutory fee for an estoppel certificate, Uhlig is required to provide the estoppel certificate without imposing additional onerous requirements, such as those in the terms and conditions of Uhlig's online ordering sites, which PropLogix contends are unenforceable and unconscionable.

This matter is now before the court on three discovery motions relating to Uhlig's attempts to obtain information about non-party Accel KKR's ("AKKR") relationship with PropLogix. AKKR is a private equity firm that invested in PropLogix in recent years and now holds two seats on PropLogix's Board of Directors. First, Uhlig seeks sanctions against PropLogix and its counsel for instructing witnesses not to answer deposition questions relating to AKKR's relationship with PropLogix "on the basis of relevance and a flawed understanding of the attorney-client privilege." (ECF 270.) As explained below, this motion is denied. Further, it is not well received. When viewed in the broader context of the course of events, if the court were to sanction either party in connection with these depositions, it would be more inclined to seriously consider sanctioning Uhlig and its counsel for choosing to go down the route of unnecessary, hyper-aggressive motion practice in violation of this court's pre-motion conference requirement. Such practices waste party and judicial resources and—when coupled with Uhlig's counsel's vitriolic and incendiary tone— fuel the animosity that already exists between the parties to this contentious litigation and undermine the level of professionalism among the bar. But the court will not go down the sanctions route here because doing so would not help temper the tenor of this litigation going forward. The court will, however, order portions of the 30(b)(6) deposition to be reconvened so that Uhlig can obtain testimony that PropLogix's counsel foreclosed. In doing so, the court is not ordering the deposition reconvened as a sanction, but rather because PropLogix's counsel offered as much.

The second set of motions before the court is PropLogix and AKKR's motions seeking a protective order to prohibit Uhlig from taking the deposition of David Cusimano ("Cusimano"). (ECF 258, 259.) According to Uhlig, Cusimano occupies one of AKKR's two seats on PropLogix's Board of Directors, and Uhlig aims to explore the extent to which he has non-privileged knowledge that might bear on the issues in this case. As explained below, the court

denies the motions because PropLogix and AKKR have not demonstrated good cause for their requested protective order.  Accordingly, Uhlig may proceed with Cusimano's deposition.

Lastly, the court notes that the parties' disputes over the propriety of the deposition questioning at issue is intertwined with their disputes over the proper scope of attorney-client privilege and the work-product doctrine.  In a nutshell, neither party is 100% correct about the scope of privilege and work-product.  Both parties have oversimplified how to navigate the boundaries of privilege and work product, and it is simply not practical for the court to try to resolve their numerous areas of disagreement in such broad strokes, devoid of context.  So, in order to facilitate the depositions, the court offers to participate in these depositions to provide clarification and make contemporaneous rulings (as needed) to help the parties navigate the scope of any privilege and/or work-product objections that arise during the depositions.  The court is reluctant to involve itself in that degree of minutiae, but believes that doing so will ultimately prove to be the most efficient way to resolve any such areas of disagreement while avoiding further motion practice that will only serve to protract the parties' disagreements on these points.

## I.      MOTION FOR SANCTIONS

The court turns first to Uhlig's Motion for Sanctions Against PropLogix and Its Counsel.[1] According to Uhlig, PropLogix "impeded the depositions of PropLogix's CEO, Alex Eckelberry,

---

[1] Uhlig's motion repeatedly calls out PropLogix's attorney individually by name—nearly 60 times scattered throughout the intro, headings, argument, conclusions, request for sanctions, etc.  It may be appropriate to use opposing counsel's name in a brief filed with the court in certain contexts (e.g., for purposes of clarity).  But here, Uhlig's motion calls him out by name so gratuitously that it is clear Uhlig is trying to malign him and impugn his reputation.  This tactic is unprofessional.  It reflects poorly on Uhlig's counsel by illustrating her personal animosity toward a fellow member of the bar.  And then PropLogix responded by also calling out Uhlig's attorney by name.  Whether this was more of a tit-for-tat approach versus necessary to recite the sequence of events between counsel is unclear—perhaps a bit of both.  But PropLogix does not call out Uhlig's counsel by name as excessively, and the overall tone does not seem as bent on vilifying

and its corporate representative, Tim Healy, by instructing both witnesses not to answer on the basis of relevance and a flawed understanding of the attorney-client privilege." (ECF 270, at 1.) Uhlig asks the court to order the Eckelberry and Healy depositions to be reopened and order PropLogix and its counsel to pay a variety of fees and costs associated with both the original and reconvened depositions. PropLogix's response begins by noting that "Uhlig's motion does not include any of the context surrounding that issue." (ECF 287, at 1.) The court therefore begins with an explanation of that surrounding context.

A.   **Background**

The parties scheduled Eckelberry's deposition to occur on February 1 and Healy's deposition (both individually and as PropLogix's Rule 30(b)(6) designee) to occur on February 7 and 8. (ECF 222, 238.) In advance of these depositions, the parties conferred about Uhlig's Rule 30(b)(6) topics. Specifically, PropLogix provided comments and objections to Uhlig's Topics 3, 4, and 5 regarding AKKR ("AKKR Topics") on January 24. (ECF 287-1, at 5.) On January 26, the parties discussed the deposition and PropLogix's objections to the AKKR Topics, but were unable to reach a resolution. (ECF 287, at 2.)

Consequently, on January 30, PropLogix emailed the court to request a discovery conference. The email stated, in pertinent part:

> Uhlig has requested that PropLogix produce a corporate representative to testify regarding: (i) the members of PropLogix, including the percentage ownership of each and any change in the same over the past five (5) years; (ii) the relationship between PropLogix and Accel-KKR; and (iii) the terms of the investment, purchase, or other agreements between PropLogix and Accel-KKR. **Uhlig has indicated that it intends to ask similar and related**

---

Uhlig's counsel. At this point, the court simply wishes to make clear that, going forward, it expects all counsel in this case to behave like professionals.

> **questions to PropLogix's other witnesses, including its CEO Alex Eckelberry and President Tim Healy**.
>
> PropLogix and Uhlig have conferred regarding these topics, but have reached an impasse. We therefore request that the Court schedule a conference to discuss them. **Mr. Eckelberry's deposition is scheduled for February 1st and PropLogix's corporate representative deposition is tentatively scheduled for the week of February 5th**.

ECF 287-3, at 6-7 (emphasis added). Because Eckelberry's deposition was scheduled to begin just two days later, the undersigned's chambers promptly responded by offering a conference the next day, at 10:00 a.m. on January 31. (ECF 287-3, at 6.) Uhlig's counsel said they were not available then (none of them, apparently), so chambers offered a later time on January 31 or a time slot the afternoon of February 1. (ECF 287-3, at 5.) But Uhlig told PropLogix it preferred to do the conference on Monday or Tuesday of the following week (after Eckelberry's deposition but before Healy's personal and corporate deposition), so the court scheduled the conference for Monday, February 5. (ECF 287-3, at 4.) At the time, PropLogix warned Uhlig that waiting until February 5 for the discovery conference would present a "wrinkle" with Eckelberry's deposition unless Uhlig agreed to hold its questions about the company's ownership and AKKR until the parties could get the court's guidance. (ECF 287-3, at 4.) PropLogix specifically reminded Uhlig that it had requested the court's guidance about this questioning not only with respect to the 30(b)(6) deposition but also Eckelberry and Healy's personal depositions. (ECF 287-3, at 3.) Uhlig responded that it still wanted to delay the discovery conference to the following Monday, February 5. (ECF 287-3, at 3.)

Eckelberry's deposition proceeded as scheduled on February 1. PropLogix objected to some of the questions Uhlig asked Eckelberry relating to AKKR and instructed Eckelberry not to answer, citing the then-scheduled discovery conference with the court on Monday. PropLogix

also offered to reproduce Eckelberry to answer the questions if the court determined the objections were improper.  (*See, e.g.*, ECF 287-4, at 43:9-44:4.)  At this point, Uhlig's counsel tried to characterize PropLogix's objection as based solely on lack of relevance and threatened to seek sanctions if Eckelberry did not answer.  (ECF 287-4, at 45:1-9.)  But PropLogix's counsel pointed out that PropLogix had "teed this issue up" by requesting a conference with the court and assured Uhlig that he was "not instructing him not to answer forever," only "to refrain from answering the question until the court gives . . . guidance on this subject" during the conference on Monday.  (ECF 287-4, at 45:10-46:5.)  Uhlig's counsel then mischaracterized the record and reiterated the threat of sanctions:

> The court doesn't have any idea what you've asked for a conference, number one.
> Number two, your objection was to the topics of a corporate representative deposition . . . .
> . . . .
> We will seek sanctions . . . .

(ECF 280-1, at 46:6-24.)  The most charitable assumption the court can make is that Uhlig's counsel had not read PropLogix's email to the court, which plainly stated the broader nature of the discovery dispute.  PropLogix attempted to once again remind Uhlig of the nature of the dispute pending before the court and reiterated that PropLogix had agreed to schedule the conference for Friday or Monday as a professional courtesy to Uhlig's counsel.  (*Id.* at 47:11-49:1.)  Hearing none of this, Uhlig's counsel persisted on her rant.  (*Id.* at 49:2-20 ("there will be a request for sanctions … there's just been incredibly unprofessional conduct"), 52:7-19 ("That will be a basis for a motion for sanctions against you, Mr. …").)

The deposition proceeded, heated.  When PropLogix's counsel would instruct the witness not to answer, Uhlig would try to mischaracterize the instruction not to answer as being based solely on a lack of relevance, threaten sanctions, call him unprofessional, etc.; meanwhile,

PropLogix's counsel would repeatedly clarify that he was instructing the witness not to answer not solely on the basis of lack of relevance, but also because of the pending conference with the court. (*Id.* at 186:21-190:17, 378:23-381:1.)  According to PropLogix, Eckelberry ultimately answered sixty-six questions pertaining to AKKR, including those related to six exhibits, but did not answer eight questions as per his counsel's instructions.  (ECF 287, at 8.)

The next day, Uhlig and PropLogix discussed the upcoming discovery conference and the AKKR Topics.  PropLogix's counsel asked Uhlig's counsel what specific questions about AKKR she intended to ask Healy during the 30(b)(6) deposition that the court would need to resolve at the discovery conference.  She responded, "I don't know; I think I got everything yesterday" (meaning, during Eckelberry's deposition).  (ECF 287-5, at 7; *see also* ECF 287-9, at 2 ("Had we been unable to learn what was needed, I do believe such conduct is sanctionable.").)  When asked whether that meant they could "email the court and take those topics off the notice," Uhlig's counsel hesitated because she was concerned that removing the topics meant PropLogix would not let her ask "any question that includes the word AKKR."  (ECF 287-5, at 7-8.)  The parties ultimately agreed that Uhlig could ask Healy about AKKR during the 30(b)(6) deposition so long as the questions did not go beyond the questions asked of Eckelberry, and if PropLogix believed the answer "needs to be protected" and is beyond what Eckelberry testified, then the parties would "ask the court after about that and resume" the deposition for those questions.  (ECF 287-7, at 1.) Consequently, PropLogix emailed the court on Sunday evening to cancel the discovery conference set for the next morning.  (ECF 287-8.)

On February 7 and 8, Uhlig deposed Healy in his personal capacity and as corporate representative of PropLogix, and reportedly asked Healy 49 questions pertaining to AKKR. PropLogix objected to seven of the 49 questions because PropLogix believed they exceeded the

scope of what Uhlig's counsel asked of Eckelberry during his deposition.  PropLogix's counsel instructed Healy not to answer these questions, believing this objection to be in line with the parties' agreement about how they planned to handle those questions.  (ECF 287, at 10-11.)

### B.        Eckelberry's Deposition Need Not Be Reconvened

Uhlig now asks the court to sanction PropLogix by ordering Eckelberry's deposition to be reconvened on the grounds that PropLogix lodged objections as to relevance and privilege that were not proper.  In response, PropLogix contends that counsel's objections and instructions not to answer the AKKR-related questions on the basis of relevance were his attempt to preserve his ability to present to the court a Rule 30(d)(3) motion and "preserve the issue for meaningful comment by the Court" during the discovery conference then-scheduled for February 5.  (ECF 287, at 5-6.)  Indeed, PropLogix explained early on during Eckelberry's deposition that he was not instructing the witness not to answer based solely on relevance.  Rather, he was instructing Eckelberry not to answer because of the pending discovery hearing with the court, at which he intended to seek guidance from the court as to whether Uhlig's questions regarding AKKR's relationship with PropLogix were permissible.  (ECF 280-1, at 43:12-44:24; 45:10-46:2.)

Uhlig's motion rests on its attempt to mischaracterize PropLogix's counsel as having instructed the witness not to answer based on relevance and thus sanctions are warranted because "[t]he law is very clear that you cannot instruct a witness not to answer based on . . . relevance." (ECF 280-1, at 44:25-45:9.)  Uhlig is correct that one cannot instruct a witness not to answer on grounds of relevance.  The fallacy in Uhlig's logic is that it ignores—now, just as Uhlig's counsel did at the deposition—that PropLogix repeatedly clarified that it was making the objection because it intended to present argument to the court during the discovery conference scheduled for the

following Monday.  So PropLogix was in essence suspending the deposition to present a Rule 30(d)(3) motion at the discovery conference.  PropLogix's actions were within the rules.

Uhlig trivializes PropLogix's attempts to seek a discovery conference with the court as a "red herring" because PropLogix made the request only two days before Eckelberry's deposition, and Uhlig insists that sanctions are warranted because PropLogix never actually *filed* a Rule 30(d)(3) motion.  (ECF 292, at 1-3 & n.2.)  The court will not condone Uhlig's non-compliance and gamesmanship with this court's local rules requiring a pre-motion discovery conference. Uhlig could have avoided the entire debacle at Eckelberry's deposition if counsel had actually read and acknowledged the content of PropLogix's email to the court framing the scope of the discovery dispute.  Uhlig also could have avoided problems at the deposition by having any one of its lawyers who have entered their appearance in the case (or another one of the firm's 500+ lawyers) attend the discovery conference at the date and time offered by the court *before* the deposition.  Uhlig did neither.  Nor did Uhlig acknowledge PropLogix's email in advance of the deposition warning against "wrinkles" that could occur by postponing the discovery conference.  Instead, Uhlig chose to forge ahead with the deposition.

Then, the day after the deposition, Uhlig admitted to PropLogix during a telephone call that it had gotten everything needed from Eckelberry and that the discovery conference on February 5 could be cancelled.  Based on these representations, PropLogix reasonably understood that Uhlig was satisfied with Eckelberry's testimony and a Rule 30(d)(3) motion was unnecessary, so PropLogix emailed the court and cancelled the discovery conference.  This conference would have been a prerequisite under this court's local rules to PropLogix filing a Rule 30(d)(3) motion. But when Uhlig apparently changed its mind about having what it needed from Eckelberry, it now blames PropLogix.  Meanwhile, Uhlig never requested a pre-motion conference with the court

before filing the instant motion.  In other words, PropLogix complied with this court's pre-motion conference requirement, while Uhlig did not it.  One of the main purposes of this requirement is to provide an avenue for the court to provide early guidance on discovery disputes so that they do not unnecessarily escalate, precisely as they did here.

In sum, Uhlig's counsel admitted she "got what she needed" from the deposition, lulled PropLogix into cancelling the discovery conference, and never requested a pre-motion discovery conference before filing the current unauthorized motion.  The court therefore denies Uhlig's motion for sanctions to the extent that it seeks to reconvene Eckelberry's deposition.

### C.        The Court Orders the Healy/30(b)(6) Deposition to Be Reconvened

As opposed to Eckelberry's deposition, which occurred before the then-scheduled discovery conference, PropLogix's counsel overstepped his bounds in instructing Healy not to answer questions based on a lack of relevance during the deposition on February 7 and 8.  That deposition was convened after the discovery conference was cancelled per the parties' mutual agreement.  PropLogix therefore cannot rely on the pending discovery conference with the court as a reason for instructing a witness not to answer based on a lack of relevance.  By cancelling the discovery conference, PropLogix effectively agreed not to present a motion to the court under Fed. R. Civ. P. 30(d)(3).  As such, PropLogix was limited to instructing the witness not to answer only on the basis of privilege, not on the basis of relevance.  *Resol. Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) ("Under the plain language of Fed. R. Civ. P. 30(d)(1), counsel may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to suspend a deposition in order to present a motion under Fed.R.Civ.P. 30(d)(3).  It is inappropriate to instruct a witness not to answer a question on the basis of relevance.").

Moreover, by that time, PropLogix was aware that the AKKR Topics in the 30(b)(6) notice were fraught with disagreement about relevance and privilege concerns. Yet PropLogix cancelled the discovery conference and proceeded with the Healy/30(b)(6) deposition anyway. And, contrary to Uhlig's representation that it had what it needed from Eckelberry, Uhlig never expressed to PropLogix that it had what it needed from Healy after the deposition concluded. Uhlig's motion expresses exactly the opposite.

The court therefore intends to hold PropLogix to its agreement to resume the 30(b)(6) deposition after the court settled the parties' disagreements as to the AKKR Topics during the 30(b)(6) deposition. As noted above, before the 30(b)(6) deposition, the parties had agreed that (1) Uhlig could ask questions about the AKKR Topics so long as the questions did not go beyond the scope of questions asked of Eckelberry, (2) PropLogix could object if it believed the answer "needs to be protected" and is beyond what Eckelberry testified, and (3) the parties would "ask the court after" the deposition about the objection and then resume the deposition for those questions. (ECF 287-7, at 1.) Having made that agreement, PropLogix is bound to honor it by resuming the 30(b)(6) deposition so that Uhlig may ask its questions related to the AKKR Topics listed in Uhlig's original 30(b)(6) notice that were not answered during the original examination.

### D. To the Extent the Parties Seek a Ruling on Any Privilege and/or Work Product Objections, the Court Will Participate in the Rule 30(b)(6) Deposition

Uhlig complains, and the court agrees, that PropLogix's counsel expanded the attorney-client privilege beyond its bounds when he instructed the witnesses not to answer questions relating to discussions with board members, during board meetings and outside of board meetings, simply because counsel was "present" during those discussions. *See New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 444 (D. Kan. 2009) ("There is a distinction between a conference with counsel and a conference at which counsel is present; the mere presence of counsel at a meeting does not

make all communications during the meeting privileged.").  Not all communications involving attorneys are privileged.  *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir. 1995) ("[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege.").  And certainly counsel's "presence" during the conversations do not make them privileged.  The privilege only protects confidential communications "made in order to obtain legal assistance from the attorney in his capacity as a legal advisor."  *In re Grand Jury Proc.*, 616 F.3d 1172, 1182 (10th Cir. 2010).  This means the communication "must relate to legal advice or strategy sought by the client."  *Id*.

Work product protects "documents and tangible things that are prepared in anticipation of litigation," unless there is "substantial need" for the materials such that a litigant cannot reasonably prepare its case without them, FED. R. CIV. P. 26(b)(3), or the protection is waived by use or disclosure of the materials, *see United States v. Nobles*, 422 U.S. 225, 239-40 (1975).  "[F]acts contained within work product" are not protected.  *Resolution Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995).

Based on the declaration of PropLogix's General Counsel Katherine Miller, which PropLogix submitted with its response brief, it appears that PropLogix contends a broad swath of information that Uhlig sought to explore during these depositions is protected by attorney-client privilege or the work-product doctrine because either Miller or outside counsel provided legal advice or discussed legal strategy related to this lawsuit.  (ECF 287-11.)  But Miller's declaration is vague about some interactions, stating that she "was present for the purpose of providing legal advice related to the lawsuit" or that outside counsel "participated in the calls" but she does not affirmatively state that she or outside counsel actually rendered legal advice or that legal strategy

12

predominated all of the board meetings and calls.  (*Id.*)  Uhlig was (and is) entitled to explore relevant, non-privileged communications and information during PropLogix's 30(b)(6) deposition.

Given that PropLogix's objections during the original 30(b)(6) deposition encompassed overlapping claims of privilege and relevance, which the parties were unable to resolve on their own, the court offers to participate in the reconvened 30(b)(6) deposition, to the extent necessary, to provide clarification and contemporaneous rulings for any privilege and/or work product objections that arise during the deposition.  Without the court's presence at the deposition, the court is concerned that the parties will be back before the court disputing more objections.  With a trial in less than four months, the parties cannot afford to waste any more time.  (*See* ECF 300, at 2 n.3 ("Perhaps the parties and counsel would do well to focus less on raising technical objections to discovery and more on developing plans to reach a practical resolution of their competing claims by trial, settlement or summary judgment.").)  Therefore, if the parties are going to seek a court ruling on any disputes over the proper scope of privilege or work product that might arise during the deposition, the court directs counsel to contact the undersigned's courtroom deputy to coordinate the court's attendance at the reconvened deposition.  The deposition may take place live at the courthouse or via Zoom if the witness is located elsewhere.  During the deposition, it will be PropLogix's counsel's prerogative and responsibility to properly instruct the witness as necessary to preserve any claims of privilege, and, to the extent Uhlig disagrees with the objection and instruction, the court will rule on the objection contemporaneously so that the deposition does not have to be resumed at a later time.  The court will not entertain any after-the-fact disputes over the scope of privilege or work product.

### E.   <u>Monetary Sanctions are Not Warranted</u>

In addition to requesting that the court reopen the depositions of Eckelberry and Healy, Uhlig asks the court to impose sanctions against PropLogix and its counsel by ordering them to pay (1) "all costs and fees associated with the reexamination of Eckelberry and Healy, including all court reporter and videographer fees and the costs and fees of Uhlig's counsel"; (2) "one-half of the costs and fees associated with the original examinations of Eckelberry and Healy, including all court reporter and videographer fees and costs and the fees of Uhlig's counsel, except those fees relating to counsel's preparation time"; and (3) "the costs and fees incurred by Uhlig in briefing this Motion for Sanctions and any Reply." (ECF 270, at 15.)

Uhlig contends sanctions are "mandatory" when an attorney improperly instructs a witness not to answer. (*Id*. at 3-5.) Not so. The law Uhlig invokes makes sanctions permissible but not required in these circumstances. For instance, Uhlig cites 28 U.S.C. § 1927, which states that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously *may* be required by the court to satisfy personally the excess costs, expenses, and attorneys fees reasonably incurred because of such conduct." (*Id*. at 3 (emphasis added).) Rule 30(d)(2) likewise uses permissive language, stating that the court "*may* impose an appropriate sanction . . . on a person who impedes, delays or frustrates the fair examination of the deponent." FED. R. CIV. P. 30(d)(2) (emphasis added). Uhlig also points to several cases in which the court imposed sanctions against an attorney for impeding a deposition and improperly instructing a witness not to answer. (ECF 270, at 4-5.) In those cases, the courts considered the circumstances and the attorney's conduct and, in their discretion, found sanctions were warranted. Those cases do not hold that sanctions are mandatory whenever an attorney instructs a witness not to answer.

In any event, the court finds that PropLogix's counsel's conduct does not warrant monetary sanctions.  PropLogix had a reasonable basis for its objections and instructions not to answer during the 30(b)(6) deposition, which were based on the parties' agreement to go to the court after the deposition if Uhlig sought answers about AKKR that PropLogix believed was "protected" and beyond what Eckelberry testified.  It was therefore incumbent upon Uhlig to have sought a discovery conference after the deposition so that the court could resolve those objections and determine whether the 30(b)(6) deposition should be resumed.  Yet Uhlig filed the current motion for sanctions without first seeking a discovery conference as required by D. Kan. Rule 37.1.  Had the parties simply proceeded with the discovery conference on February 5, the court could have provided the contours for proper objections in advance of the Healy/30(b)(6) deposition and thereby at least reduce, and possibly eliminate, any remaining areas of disagreement.  Or Uhlig could have and should have requested a discovery conference after Healy's deposition.  Either way, a one-hour discovery conference could have avoided the histrionics in the current motion and saved party and court resources.  The court requires such pre-motion conferences to mitigate against the risk of counsel getting so spun up over discovery disputes, as is the case here, that they get mired in protracted disputes that bog down the case.  The court would be far more inclined to sanction Uhlig for filing the current unauthorized motion and causing a gross waste of party and judicial resources.  This has done nothing to further the "just, speedy, and inexpensive determination" of the case.  FED. R. CIV. P. 1.

Ultimately, the court does not find monetary sanctions against either party to be warranted. The parties already have enough animosity between them.  Accordingly, Uhlig's motion for sanctions is denied, and each party must bear its own costs and expenses incurred in connection with the original examinations of Eckelberry and Healy (in his individual capacity and as

PropLogix's corporate representative), and the reexamination of PropLogix's corporate representative.

## II.     MOTIONS FOR PROTECTIVE ORDER

The court turns next to PropLogix and AKKR's motions seeking a protective order to prohibit Uhlig from taking the deposition of Cusimano, who is AKKR's designee on PropLogix's Board of Directors.  (ECF 258, 259.)  Uhlig says it wants to depose Cusimano to understand AKKR's involvement in PropLogix's business operations and strategy decisions (and the intent behind those decisions), including the board's decisions to appoint a new CEO, to send threat letters to Uhlig's clients, to sue Uhlig's clients in Florida, and to use third parties to obtain estoppel certificates from Uhlig's sites on behalf of PropLogix.  (ECF 264, at 2-3.)  Uhlig contends Cusimano's testimony is relevant to Uhlig's tortious interference and fraud claims.  (*Id.* at 3.) Uhlig points out that no board member has been deposed, as neither Eckelberry nor Healy are members of the board.

Under Federal Rule of Civil Procedure 26(c), the court may, for good cause, "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  FED. R. CIV. P. 26(c)(1).  Rule 26(c)(1)'s good-cause standard is "highly flexible, having been designed to accommodate all relevant interests as they arise."  *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008).  "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

The party seeking a protective order has the burden to demonstrate good cause.  *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003) (citing *Reed v. Bennett*, 193 F.R.D. 689, 691 (D. Kan. 2000)).  In determining whether good cause exists, "the initial inquiry is whether

the moving party has shown that disclosure of the information will result in a 'clearly defined and serious injury.'" *Reed*, 193 F.R.D. at 691 (internal quotations and citation omitted).  The moving party must show "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  *Univ. of Kan. Ctr. For Research, Inc. v. United States*, No. 08-2565, 2010 WL 571824, at *3 (D. Kan. Feb. 12, 2010) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).

PropLogix and AKKR argue that a protective order prohibiting Cusimano's deposition testimony is appropriate because (1) Cusimano does not have relevant information related to this action; (2) Cusimano's testimony would be duplicative of other PropLogix witnesses; (3) Cusimano is an apex witness who lacks personal knowledge regarding the claims and defenses asserted in this action and would be unduly burdened by the deposition; and (4) Cusimano cannot give deposition testimony without divulging attorney-client privileged information.  The court will address each of these arguments to determine whether PropLogix and AKKR have met their burden to demonstrate good cause.[2]

A.    **Relevance**

The court rejects PropLogix's first argument that any non-privileged information Cusimano possesses would not be relevant to Uhlig's claims in this action.  PropLogix focuses on the fact that Cusimano is not a PropLogix employee or executive and is not involved in PropLogix's day-to-day operations in order to argue that he "does not have personal knowledge of anything related to this lawsuit."  (ECF 258, at 4.)  But his lack of involvement in day-to-day operations does not mean that Cusimano has no relevant information regarding the claims and

---

[2] Because AKKR's motion "adopts and incorporates by reference the recitation of facts and the arguments articulated by PropLogix in its motion for a protective order" (ECF 259, at 1), the court refers only to PropLogix's motion and arguments in the following analysis.

defenses in this action.   Relevance under Fed. R. Civ. P. 26(b)(1) is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also In re Syngenta AG MIR 162 Corn Litig.*, MDL No. 2591, No. 15-9900-JWL, 2019 WL 5622318, at *2 & n.7 (D. Kan. Oct. 31, 2019) (recognizing the *Oppenheimer* relevance standard still exists after the 2015 amendments to Rule 26(b)(1)).  Uhlig says it seeks testimony from Cusimano regarding the Board of Directors' decisions to approve sending letters to Uhlig's clients and to approve PropLogix's use of third-party companies to place orders with Uhlig on PropLogix's behalf.   Uhlig contends this information bears on Uhlig's fraud and tortious interference claims, insofar as both claims require evidence of intent, and Cusimano's testimony would be probative of PropLogix's intent when it took those actions to send the letters and to use third-party companies to place orders.  (ECF 264, at 3.)  Moreover, Cusimano's testimony may bear on intent if AKKR pushed PropLogix to take the actions alleged to be tortious.

And, to the extent PropLogix is attempting to argue that the irrelevance of the discovery demonstrates that Uhlig's purpose in taking Cusimano's deposition is annoyance, oppression, and harassment (*see* ECF 258, at 3-4), PropLogix has not met its burden.  PropLogix has made no showing that this deposition is sought for such prohibited purposes or that the deposition will result in a clearly defined and serious injury.

Accordingly, the court finds that PropLogix has not shown that Cusimano has no relevant information or that Uhlig's purpose in taking Cusimano's deposition is to annoy, oppress, or harass the witness.

B.      **Non-Cumulative**

To show that Cusimano's testimony would be cumulative, PropLogix points to its production of hundreds of thousands of documents and the witnesses it has already produced, including PropLogix's CEO, President and corporate representative, Director of Operations, Operations Supervisor, and a Property Analyst. (ECF 258, at 4.)  But even if the deposition covers some of the same areas that other witnesses testified to, it is Uhlig's prerogative to explore these same topics with Cusimano.  If that is how Uhlig wants to utilize its ten depositions under the Federal Rules, so be it.

In any event, the court is not convinced that Cusimano's deposition would be wholly duplicative of the information learned from PropLogix's document production and prior depositions.  Cusimano's deposition may cover topics regarding the Board of Directors' decisions that the other witnesses did not or could not address.  (*See* ECF 264, Exs. A-C.)  No other members of the Board of Directors have been deposed.  Moreover, the exhibits attached to Uhlig's response appear to show that the two board members from AKKR (Cusimano and David Abraham) are involved at least to some extent in PropLogix's business decisions and operations, even if they are not involved in day-to-day operations.  (*See* ECF 264, Exs. D-I.)  Uhlig is entitled to explore Cusimano's knowledge regarding the Board of Directors' business decisions.  Thus, the court finds that PropLogix has not shown that Cusimano's deposition would be cumulative.  Nor has PropLogix made any showing on this record that Uhlig's purpose is to conduct the deposition "in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party."

19

### C.   No Undue Burden

Likewise, PropLogix has not shown that the burden associated with Cusimano's deposition is significant such that a protective order is necessary.  PropLogix has not established that Cusimano is an "apex" witness," nor has it shown that his deposition "inherently involve[s] more burden" than the depositions of "regular employees."  (ECF 258, at 6.)  Unlike most apex witnesses, PropLogix did not submit an affidavit from Cusimano attesting to his busy schedule and the severe hardship and undue burden the deposition would impose on him.  And, unlike most apex witnesses, Cusimano has personal knowledge relevant to the claims and defenses in this action, such as the Board of Directors' decisions and approvals, and the business intent behind them.  PropLogix therefore has not shown that a protective order is warranted to protect Cusimano from an undue burden.

### D.   Not All Communications Are Privileged or Protected By Work Product

Finally, PropLogix contends that Cusimano's deposition is highly likely to invade the attorney-client privilege or work product doctrine because "virtually all" of Cusimano's knowledge about the claims in this case "either comes from counsel or results from discussions during which legal advice was given to and received by PropLogix related to this lawsuit."  (ECF 258, at 3.)  PropLogix points out that every discussion by the board concerning PropLogix's dispute with Uhlig have "been in the presence of PropLogix's in-house and outside counsel and/or pertain to legal advice given related to this lawsuit and litigation strategy."  (ECF 258, at 7.)

Here, although the attorney-client privilege and work product doctrine prohibit Cusimano from testifying about legal advice the board members sought or received at board meetings regarding the lawsuit and litigation strategy, or about documents prepared in anticipation of litigation, the court is not convinced that *all* communications at board meetings are privileged.

PropLogix appears to be seeking a court order preventing Cusimano from testifying about *any* communications during board meetings simply because counsel was present at the meetings.  But, as discussed above, the mere presence of counsel is not the standard for establishing attorney-client privilege.  Moreover, PropLogix's motion addresses the privilege issue in generalities and makes sweeping proclamations that all conversations at PropLogix's board meetings are privileged or work product.  (ECF 258, at 7 (stating Cusimano "cannot give his deposition on *any* matter regarding Uhlig without either (a) divulging information protected by the attorney-client privilege, or (b) revealing mental impressions of counsel regarding litigation strategy for this action").

For example, PropLogix contends that the January 6th letters that PropLogix sent to Uhlig's clients are protected by the attorney-client privilege and attorney work product doctrine because "counsel was present and provided legal advice during the board's discussions about whether to send the January 6th letters."  (ECF 275, at 3.)  PropLogix is correct that communications that involved board members seeking, and counsel rendering, legal advice about whether to send the letters is protected by attorney-client privilege.  However, to the extent the board members debated the business reasons for sending or not sending the January 6th letters, those communications are not privileged, and Uhlig is free to explore those business communications during Cusimano's deposition.  Indeed, given that Uhlig and PropLogix are competitors, business communications may have predominated legal advice in some of the board's discussions about Uhlig. For these same reasons, the court is not buying PropLogix's argument that *all* of the information Cusimano has about Uhlig and the January 6th letters "is inextricably bound up" in privileged communications and work product or that *all* of Cusimano's knowledge about Uhlig "springs from those privileged discussions and is shaped by the mental impressions of counsel."  (ECF 275, at 1, 4.)  During his

deposition, Cusimano must answer Uhlig's questions to the extent he can without divulging attorney-client privileged information or the mental impressions of counsel.

In sum, PropLogix has not provided sufficient information to enable the court to determine that every communication during board meetings was either privileged or work product. Therefore, the court is not persuaded by PropLogix's argument that Cusimano cannot testify without divulging information protected by the attorney-client privilege and work-product doctrine. As with the court's offer to participate in the reconvened 30(b)(6) deposition, the court will also make itself available for Cusimano's deposition, if needed, to provide clarification and contemporaneous rulings for any privilege and/or work product objections that arise during his deposition. Again, the court makes this offer only because it appears to be the most efficient way to resolve the parties' privilege disputes and to avoid further unnecessary motion practice. The court will not make after-the-fact rulings on privilege and work-product objections. So, if the parties are going to seek a court ruling on any disputes over the proper scope of privilege or work product that might arise during the deposition, the court directs counsel to contact the undersigned's courtroom deputy to coordinate the court's attendance at Cusimano's deposition.

### E.      Conclusion

Because PropLogix has not demonstrated good cause for a protective order prohibiting Cusimano's deposition, its motion is denied. For the same reasons, AKKR's motion, which adopts the arguments articulated by PropLogix in its motion for protective order, is denied.

**IT IS THEREFORE ORDERED** that Uhlig LLC's Motion for Sanctions Against PropLogix and Its Counsel (ECF 270) is denied to the extent that the court will not award monetary or other sanctions as requested by Uhlig. The court, however, orders the 30(b)(6) deposition of PropLogix to be reconvened as soon as reasonably practicable. As discussed above, the 30(b)(6)

witness must answer all questions to which PropLogix previously objected on the basis of relevance, and the court will participate in the 30(b)(6) deposition to make any rulings needed on privilege issues.

**IT IS FURTHER ORDERED** that PropLogix, LLC's Motion for Protective Order (ECF 258) and Third Party Accel-KKR Fund II Management Company, LLP's Motion for Protective Order (ECF 259) are denied.  PropLogix and AKKR must produce Cusimano for deposition as soon as reasonably practicable, and the court will participate in the deposition to the extent necessary to make any rulings on privilege issues.

**IT IS SO ORDERED.**

Dated March 25, 2024, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge